[Civ. No. 24063.   Second Dist., Div. Two.   June 14, 1961.]

SUPERIOR BEDDING COMPANY (a Corporation) et al., Appellants, v. DAVID ERENBERG, Respondent.

Buchalter, Nemer & Fields for Appellants.

Samuel A. Miller and Norman Pittluck for Respondent.

McMURRAY, J. pro tem.*—The plaintiffs[1] have appealed from an adverse judgment rendered by the court without jury on their action for specific performance of, and declaratory relief in connection with a written agreement of March 29, 1949, between two brothers, plaintiff Victor Erenberg and defendant David Erenberg.

The agreement was entered into on the severance of a business relationship which had theretofore existed between these brothers and provided for division of corporate and other property belonging to them. Under its terms, either party might become the "buyer" or "seller"; eventually David became the "seller" and Victor the "buyer." Among the corporate assets divided by the agreement were certain parcels of real property located in the city of Los Angeles along Medford Street. These parcels were so divided that the two brothers received adjoining frontages, Victor receiving a 70-foot frontage and David getting a 130-foot frontage on Medford Street. Under the terms of the agreement, Victor was to attempt to obtain an additional 60-foot frontage from the city of Los Angeles by taking steps to compel abandonment of a portion of Tremont Street, a dedicated, but fenced and unused street which intersected Medford and was westerly of and adjacent to Victor's tract. The agreement provided that if the city refused to abandon this street, David would convey, without compensation, an additional 30 feet of his frontage to Victor so that each would own 100 feet of frontage on Medford Street.[2] It is to enforce such conveyance of this additional 30 feet of frontage that Victor brought this suit.

In April 1951 Victor, with David's knowledge, initiated proceedings for the vacation of the 60-foot strip known as

---

[1]While both Superior Bedding Company and Victor Erenberg are plaintiffs, we will refer to "Victor" as representing both plaintiffs and "David" as the defendant.

[2]Paragraph 5 of that agreement reads as follows: "With reference to the property described as Lots 139 to 142, inclusive, of Tract 8693, there has been dedicated a public street 60 feet in width adjacent to the Westerly line of said property. Said street has never been used and is presently fenced. In the event that at any time the City of Los Angeles should officially notify Buyer that it will not abandon said street, then Seller agrees that he will convey to buyer and/or SUPERIOR, without compensation, an additional 30 feet, to the end that Buyer shall own the Westerly 100 feet of said Lots 139 to 142, inclusive. Both parties agree that as soon as may be legally permissible, or at all events within five (5) years, they will take such steps, proceedings and legal action as may be required to compel the abandonment of said street. Each party agrees to bear and pay one-half of the cost, including attorneys' fees, thereof."

*Assigned by Chairman of Judicial Council.

Tremont Street by filing a petition with the Los Angeles City Council. On December 14, 1951, Victor received a letter from the Los Angeles City Clerk "recommending the conditional granting of the request . . . for the vacation of Tremont Street . . ." upon the performance of certain conditions by Victor, the most important of which was the dedication by him, from other land owned by him, of a strip of land 20 feet wide and 300 feet long fronting on Medford Street just west of Tremont Street.

David was informed of this letter but evidenced no desire to confer concerning it. Thereafter, on December 21, 1951, the Los Angeles City Engineer wrote to Victor to the same effect as the city clerk had done, with the request for the payment of the fee for vacation proceedings. In January 1952, counsel for David and Victor met and David was requested to compensate Victor for the 20 by 300-foot strip, since if it were given to the city it would save David from relinquishing his 30-foot strip under the agreement. David refused. On May 28, 1952, Victor wrote to the city engineer requesting that the city reconsider its position requiring the dedication of the 20 by 300-foot strip. On June 10, 1952, the city engineer replied stating that the city needed the 20-foot strip as part of the planned future widening of Medford Street, and he further noted that the proposed dedication would "not involve any physical change in the fence line along the north side of Medford Street and would permit all ordinary uses of the land except erection of buildings thereon until such time as the legislative body shall accept same for street purposes."

The trial court concluded that the letter of June 10, 1952, from the city did not have "the effect of officially denying, or denying in any other way, manner or form plaintiffs' original petition for the vacation of Tremont Street," and that the city had "not refused to grant a vacation and abandonment of Tremont Street." The trial court did find, however, that the city required that plaintiff dedicate his 20 by 300-foot strip of land to the city in exchange for its granting of the petition for abandonment; and, further, the trial court found that the 20 by 300-foot strip was a useful portion of the plaintiff's premises and that it had some monetary value.

The trial court also found (1) that, while the agreement of March 29, 1949, made no reference to the 20-foot strip of land, Victor and David knew as early as 1940 that plans called for a widening of Medford Street from 60 to 80 feet, (2) that, because of the necessity of obtaining a zoning vari-

ance in 1941, Victor and David knew of the 20-foot building setback requirement along Medford Street, (3) that these facts were, or should have been, known to the parties when the agreement of 1949 was entered into, and (4) that it was thus known to or contemplated by the parties that certain conditions might attach to the granting of the vacation of Tremont Street.

The court awarded the defendant David $500 for reasonable attorneys' fee and found that plaintiffs were not entitled to fees or costs under the provisions of paragraph 5 of the agreement since the proceedings under that paragraph ''were not commenced nor conducted in accordance with the terms and conditions set forth'' therein.

The court below based its judgment on a two-step argument: first, that the parties to the agreement contemplated that the city would require either the dedication of the 20 by 300-foot strip or some equivalent dedication as a condition to the vacation of Tremont Street; and, second, that therefore the imposition of this condition was not the official notification of the city's refusal to abandon the street. It thus follows from the judgment that the plaintiffs failed to take ''such steps, proceedings and legal action as may be required to compel the abandonment of said street'' since such a ''step'' would have been the dedication to the city of the 20 by 300-foot strip. By finding as it did that the action of the city council did not result in a refusal to abandon, it appears that the trial court erred. The determination of the legal effect of the city's action is not a determination of a question of fact but is, rather, a determination of a question of law. Granting, that under the provisions of the Streets and Highways Code, sections 8300 to 8308, a city may attach conditions to the abandonment of the street, nevertheless, when such conditions are to be performed by a petitioner, it would appear that the imposition of the condition requiring dedication of a portion of petitioner's land would amount to a refusal to abandon. The conditional acceptance of a contract is, of course, a counteroffer, and is a refusal to perform in accordance with the terms of that offer (*Johnson* v. *Goldberg,* 130 Cal.App.2d 571, 576 [279 P.2d 131]; *Lewis* v. *James,* 134 Cal.App.2d 15, 21 [285 P.2d 86]), and there is no reason why a different rule should apply to the granting or denying of a petition to abandon a street where the abandonment is granted on a condition not accepted by the party. Persuasive of this result is the holding in *General Elec. Co.* v. *Federal*

*Radio Commission,* 31 F.2d 630 [58 App. D.C. 386], where, after application for renewal of a theretofore issued license to operate radio stations, the commission granted a renewal but restricted the terms of one of the licenses to operation only during the daylight hours. Under the applicable federal act, there was a right of appeal from a "refusal to renew" and the court said, at page 633: "The appellant rightly contends that the refusal of the commission to renew its license, except as modified with respect to the time of operation, amounted to a refusal of a renewal within the sense of the act of 1927."

Here, where the condition upon which abandonment of a portion of Tremont Street would have been granted was one whereby appellants would be required to give up a strip of land 20 feet by 300 feet along Medford Street, there is nothing in the record showing that such condition was within the contemplation of the parties when they drafted paragraph 5 of their agreement.

■■■ The respondent contends also that there was not substantial performance by appellants in that they did not take any legal action with a view to compelling the abandonment of Tremont Street. The taking of such action would not appear to be a necessary step in order to perform under the agreement since it has been consistently held in this state that a court will not review the action of a municipal authority except where there is fraud or a plain abuse of power. ■■ (See *City of Los Angeles* v. *Fiske,* 117 Cal.App.2d 167, 172 [255 P.2d 445], where it is said: "The power to vacate a city street is vested solely in the municipality. The act of vacating can be done only upon a finding that the property in question is unnecessary for present or future uses as a street. (Sts. & Hys. Code, §§ 8300-8331.) ■■ Courts generally are powerless to interfere with municipal control except upon convincing evidence of fraud, arbitrary action or an abuse of discretion. (See *People* v. *City of San Rafael,* 95 Cal.App. 733, 740 [273 P. 138]; *People* v. *City of Pomona,* 88 Cal. App.2d 460, 466 [198 P.2d 959, 200 P.2d 176].)" (See also *National City* v. *Dunlop,* 86 Cal.App.2d 380 [194 P.2d 788].)

■■■ The record before us in this appeal is devoid of anything which could shadow forth fraud or any abuse of discretion on the part of the city, and it would be a sophistic interpretation of the agreement to require a probably useless litigation to be instituted.

There is some contention by the respondent that he was not officially notified of the city's refusal to abandon the street. It is difficult to follow this reasoning when it is remembered that both the city clerk and the city engineer gave notice which was communicated to respondent of the action of the city council in this respect. In any event, all that is required of plaintiff, in a specific performance action, is that there be substantial performance by that plaintiff of his obligations under the contract. (*Butterfield* v. *Gentles,* 9 Cal.2d 275, 277 [70 P.2d 613].) We are of the opinion that appellant here substantially complied with the requirements of the contract relative to his attempting to procure the abandonment.

Under the language of the contract here, it is clear that respondent was also under a duty to attempt to effect the abandonment of this street in conjunction with the appellant. The record discloses no activity on the part of respondent in this respect, but rather shows that he remained immobile and contented himself with insisting that appellant had not performed under the contract.

Under timely objection and a later motion to strike, the trial court admitted testimony relating to a condition requiring a 20-foot setback which was imposed by the city upon the issuance of a building permit in 1941. This setback was on the northerly line of Medford Street and was in front of the building now owned by appellant. From this evidence it appears that the court inferred that at the time of making the contract the brothers knew that the city would require a dedication of this strip upon a petition for abandonment of the portion of Tremont Street. This would appear to be a gratuitous rewriting of the contract by the trial court, a function it should not perform. (*Jones* v. *Pollock,* 34 Cal.2d 863 [215 P.2d 733] ; *Barker* v. *Sherman,* 123 Cal.App.2d 810, 812 [267 P.2d 863] ; *Piazzini* v. *Jessup,* 153 Cal.App.2d 58, 62 [314 P.2d 196] ; *Bolen* v. *Parks,* 149 Cal.App.2d 460, 468 [308 P.2d 521].)

This evidence should not have been admitted as it was not of aid in resolving any ambiguity in the contract, but was, in fact, in derogation of the terms of the contract. From the language used in paragraph 5 relative to the parties agreeing that " [b]oth parties agree that as soon as may be legally permissible, or at all events within five (5) years, they will take such steps, proceedings and legal action as may be required to compel the abandonment of said street. Each party agrees to bear and pay one-half of the cost, including attorneys' fees,

thereof,'' it would appear to be a reasonable construction of the contract that when the parties referred to ''steps, proceedings, and legal action as may be required to compel the abandonment of said street'' they considered that language to require both parties to cooperate in obtaining the abandonment, and that if the abandonment was not granted for any of the reasons which would justify the institution of a legal action, they would then take such action. ▇ To construe the contract otherwise would be to require the doing of a useless act, and it is a familiar rule of construction that when a contract is ambiguous or uncertain '' [t]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained. ...'' (*Bohman* v. *Berg,* 54 Cal.2d 787, 797 [8 Cal.Rptr. 441, 356 P.2d 185].)

The judgment is reversed.

Fox, P. J., concurred.

Ashburn, J., concurred in the judgment.