[Civ. No. 46813. Second Dist., Div. One. July 1, 1976.]

CITY OF RANCHO PALOS VERDES et al.,
Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF ROLLING HILLS
ESTATES et al., Defendants and Respondents;
PALOS VERDES PROPERTIES et al.,
Real Parties in Interest and Appellants.

SIERRA CLUB et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF ROLLING HILLS
ESTATES et al., Defendants and Respondents;
PALOS VERDES PROPERTIES et al.,
Real Parties in Interest and Appellants.

**COUNSEL**

Richards, Watson, Dreyfuss & Gershon, Glenn R. Watson and David H. Anderson for Plaintiffs and Appellants.

Pollock, Williams & Berwanger, John P. Pollock, Charles V. Berwanger, Mitchell, Silberberg & Knupp and Charles A. Collier, Jr., for Real Parties in Interest and Appellants.

Richard R. Terzian, City Attorney, Burke, Williams & Sorensen and Mark C. Allen, Jr., for Defendants and Respondents.

OPINION

THOMPSON, J.—The consolidated cases at bench arise out of action by the City Council of Rolling Hills Estates vacating a public street and providing for its future relocation in order to permit development of a 14½-acre shopping center.

■ Streets and Highways Code section 8323 provides that a city street may be vacated only if after a public hearing on notice "the city council finds, from all the evidence submitted, that any street or part thereof . . . is unnecessary for present or prospective public street purposes . . . ." Public Resources Code section 21168, part of the California Environmental Quality Act of 1970 (CEQA), states that a "decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency [is reviewable] on the grounds of noncompliance with [CEQA] in accordance with the provision of Section 1094.5 of the Code of Civil Procedure."

■ *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12] requires that an administrative agency rendering a decision reviewable pursuant to Code of Civil Procedure section 1094.5 express findings of fact sufficient to reveal relevant sub-conclusions supportive of the ultimate decision, thus enabling a reviewing court to trace and examine the agency's mode of analysis. (11 Cal.3d at pp. 516-517 and fn. 16.) Absent requisite findings, the administrative decision must be overturned on judicial review.

These consolidated appeals raise the novel issue of the applicability of *Topanga's* requirement of administrative findings to a proceeding vacating a city street pursuant to Streets and Highways Code section 8323 and a city council's consideration of an environmental impact report (EIR) in connection with a section 8323 hearing.

The appeals also concern: (1) the private versus public interest served by the vacation of a city street; (2) the sufficiency of evidence to support the conclusion that a vacated street is not necessary for present or prospective public street purposes; (3) the propriety of action of a city councilman receiving ex parte evidence to aid his decision after the public hearing was closed; (4) the adequacy of an EIR reviewed and considered in conjunction with the vacation of a public street and the

response of the vacating city council to significant environmental issues raised by opposition to the project; (5) the sufficiency of evidence to support a city council conclusion that the proposed project will not have a significant adverse effect on the environment; (6) the propriety of a charge of 25 cents per page imposed by a city clerk for copying portions of an EIR at the request of members of the public; and (7) whether the final EIR accepted by a city council was circulated to the public in a timely fashion. A cross-appeal raises the issue of definition of "relocation" of a city street so as to permit its summary abandonment.

We conclude: (1) *Topanga's* requirement of administrative findings of fact is applicable to a hearing by a city council conducted pursuant to Streets and Highways Code section 8323 and includes findings on subissues involved in the ultimate fact of necessity; (2) the requirement of administrative findings of fact applies only to a limited extent to consideration of an EIR in connection with the hearing; (3) the record fails to establish that the city council erred in concluding that the street is to be vacated for a public purpose; (4) the EIR is legally sufficient; (5) the record does not support the complaint that an excess charge was made for copying the EIR; (6) no prejudice is shown through delay in circulating the accepted final EIR to members of the public; and (7) the trial court correctly concluded that a city street is "relocated" only when relocation is an established fact. Because the matter at bench must be remanded to the city council for further findings of fact, we do not reach the other issues raised on this appeal. The sufficiency of evidence before the council to support its conclusion of lack of necessity of the street, the significance of the ex parte evidence, and the quantum of evidence supporting the city council's conclusion that the project will not have a significant adverse effect upon the environment are all questions more appropriately addressed with the aid of the findings required by *Topanga.*

## Project

Rolling Hills Estates (Rolling Hills) and the City of Rancho Palos Verdes (Palos Verdes) are general law cities. Most of Rolling Hills lies to the east of Palos Verdes. However, the boundaries of Rolling Hills protrude into Palos Verdes in a hatchet-shaped configuration with the hatchet handle flowing westward and the blade to the south. The handle of the hatchet is approximately two blocks in width and four in length. It is zoned for commercial use by Rolling Hills. Deep Valley Drive is a public street which begins near the east end of the hatchet handle and

runs westerly for three blocks to Crossfield Drive. It carries a traffic flow of 5,410 automobiles a day, with a peak load of 370 per hour. The first street to the east of Crossfield which crosses Deep Valley Drive is Drybank Drive. The north side of the hatchet handle is Silver Spur Road and the south boundary is Indian Peak Road. Palos Verdes Properties (Properties), a partnership of two private corporations, owns all of the real property in the two blocks separated by Deep Valley Drive and bounded by Silver Spur, Drybank, Indian Peak, and Crossfield. Properties owns the reversion in Deep Valley Drive by reason of the instrument dedicating an easement for highway purposes to Rolling Hills. The two blocks encompass a 14½-acre area.

The May Stores Shopping Centers, Inc. (May) contacted Properties to negotiate for the construction of a shopping center. May's plans call for 300,000 square feet of leasable space plus a parking garage. May contemplates that the center will include two department stores plus a large additional enclosed and air-conditioned shopping mall housing specialty shops.

The shopping center, as planned by Properties and May, cannot be built upon the land owned by Properties because the presence of Deep Valley Drive bisecting the area is incompatible with the plan. Properties filed a request with the city manager of Rolling Hills asking that Deep Valley Drive be vacated between Crossfield and Drybank to facilitate the construction of the proposed shopping center. A draft EIR was prepared by Properties to be used in connection with proceedings to vacate the street. Copies of the report were available to the public at a cost of 25 cents per page.

Substantial opposition to the plan developed. Owners of property abutting Deep Valley Drive protested, as did a Rolling Hills property owner who declared that the street was necessary for access to his business. The Palos Verdes Library District, which owns library property on Deep Valley Drive in the block immediately east of Drybank, similarly protested that vacation of the street would impair access to the library. Palos Verdes property owners opposed the project. Opposition on environmental grounds was expressed by the City of Palos Verdes, the Sierra Club, the League of Women Voters, and various individuals.

On September 12, 1973, the city council of Rolling Hills adopted a resolution expressing its intention to vacate the portion of Deep Valley Drive between Drybank and Crossfield. Pursuant to Streets and High-

ways Code section 8323, public hearings on the resolution were held on January 23 and February 13, 1974. A final EIR was prepared and made available for public inspection or copying at 25 cents per page. Statements supported the vacation of Deep Valley Drive and its realignment as a street curving in an arc 90 degrees southward from Drybank to a point about 75 feet north of the northerly line of Indian Peak and then turning 90 degrees to the west so as to parallel Indian Peak, then curving slightly northward to intersect Crossfield about 100 feet north of Indian Peak. The vacation and realignment is illustrated by the diagrams which follow.

Figure 1. (Environmental Impact Report, "EIR")

Exhibit 1, p. 274

Figure 2 (EIR, p. 279)

The statements asserted that the realignment will reduce traffic speed on Deep Valley Drive and will permit it to be widened six to eight feet. They predict benefits to Rolling Hills through increased revenue and taxes from the shopping center and realization of the Rolling Hills plan of commercial development. Proponents of the project asserted also that development of a single shopping center in the two blocks with a realignment of Deep Valley Drive will result in less congestion than development of the property in its existing configuration by reducing the number of driveways to the street. The opponents presented evidence of a present and future need for Deep Valley Drive as then located.

On February 27, the council, having reviewed and considered the final EIR, adopted its resolution No. 738. The resolution states "The City

Council hereby finds from all the evidence submitted that said parts of said public streets . . . are unnecessary for present or prospective public street purposes and does hereby order said parts of said public streets vacated." The vacation was made subject to the condition subsequent that street easements relocating Deep Valley Drive be deeded to Rolling Hills by Properties and May within three years, that the realigned Deep Valley Drive be completed at their expense within five years, and that the vacated street be made available for public use during that period. Upon failure of the condition, the vacated street is to revert to the city.

At the same time, the city council of Rolling Hills adopted its resolution No. 739 purporting to summarily abandon Deep Valley Drive as a street superseded by relocation pursuant to Streets and Highways Code section 1930 et seq. After a delay of several days in printing, copies of the final EIR were distributed to libraries in the area and to interested public entities.

The conclusion of the city to the effect that the vacated portion of Deep Valley Drive is unnecessary for present or future public street purposes is not supported by any other finding of fact of the city council. No findings were made with respect to the EIR except that: (1) the EIR was reviewed and considered by the council; and (2) the project will not have a significant adverse effect upon the environment. Palos Verdes and property owners and residents of Rolling Hills and Palos Verdes filed an action in mandamus to vacate the action taken by Rolling Hills. The Sierra Club and Robert E. Ryan, a resident of Palos Verdes, filed a separate action seeking the same relief. The two actions were consolidated for trial.

The trial court found: (1) that there was substantial evidence supporting the city council's conclusion that the project would not have a substantial adverse effect upon the environment; (2) that Rolling Hills "substantively and procedurally" complied with CEQA and guidelines issued to implement it and had considered and responded to significant environmental points and comments raised by the public and other governmental entities to the EIR; and (3) that substantial evidence supports the city council's conclusion that the vacation of the streets is for a "proper and legitimate purpose" and the vacated streets are "unnecessary for present or prospective public street purposes." The court found also that an excessive charge had not been levied by the City Clerk of Palos Verdes in supplying copies of the EIR to the public. It concluded that the city council, when enacting resolution No. 738

pursuant to Streets and Highways Code section 8323, was acting in a "quasi legislative capacity" so that findings of fact were not required, and the council's action was reviewable by traditional mandate pursuant to Code of Civil Procedure section 1085 rather than administrative mandate pursuant to section 1094.5.

As to resolution No. 739 summarily vacating Deep Valley Drive, the trial court concluded that there was a failure of substantial evidence supporting the proposition that Deep Valley Drive had been vacated and superseded by relocation.

The court entered its judgment denying relief to the petitioners with respect to resolution No. 738, thus permitting the future vacation and realignment of Deep Valley Drive. The court declared void resolution No. 739 summarily vacating that street. The petitioning individuals and organizations appealed from the portion of the order validating resolution No. 738, while Properties and May appealed from the portion of the judgment invalidating resolution No. 739.

### Requirement of Administrative Findings of Fact

██ Palos Verdes and the individuals and organizations appealing from the trial court's determination of validity of resolution No. 738 contend that the action of the Rolling Hills City Council is invalid for failure of that body to make findings of fact as required by *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506. Rolling Hills, May, and Properties, while conceding that findings of fact in the detail required by *Topanga* were not made by the council, argue that the council's action was legislative in character rather than adjudicatory so that the *Topanga* requirement is not applicable.

*Topanga's* rule requiring administrative findings is based upon Code of Civil Procedure section 1094.5's language requiring judicial review of the existence of substantial evidence to support the findings of the agency. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 514-515.) ██ Since judicial review by section 1094.5 applies only to adjudicatory administrative action and not to action which is legislative in nature (*Dawson* v. *Town of Los Altos Hills* (1976) 16 Cal.3d 676, 684-685 [129 Cal.Rptr. 97, 547 P.2d 1377]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]), *Topanga's* requirement is not applicable to administrative action which is legislative

rather than adjudicatory. Rolling Hills, May, and Properties thus focus directly on the threshold question of this appeal. We must determine the adjudicatory or legislative character of proceedings conducted by a city council to vacate a public street pursuant to Streets and Highways Code section 8323.

■ A legislative act predetermines what the rules shall be for the general regulation of future cases falling under its provisions, while an adjudicatory act applies law to determine specific rights based upon specific facts ascertained from evidence adduced at a hearing. (*Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 24 [35 P. 353]; *Forstner* v. *City etc. of San Francisco* (1966) 243 Cal.App.2d 625, 632 [52 Cal.Rptr. 621]; *City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 393 [3 Cal.Rptr. 796]; Deering, Cal. Administrative Mandamus (Cont. Ed. Bar) § 2.8.) ■ The situation of the case at bench 'has some of the characteristics of both a legislative and adjudicatory action. Streets and Highways Code section 8323 requires a hearing at which the city council must determine "from all the evidence" whether the street which it proposes to vacate is needed or will be needed in the future. The action vacating the street affects the specific rights of the specific persons holding the reversion in the underlying land and the specific rights of specific persons in the immediate vicinity to use the street. The action, however, also terminates the future rights of the general public in the street and declares a general prospective traffic pattern.

This court addressed the problem of mixed legislative and adjudicatory characteristics of agency action in *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271 [63 Cal.Rptr. 889]. It dealt with the nature of judicial review of a decision of a water district denying a petition to exclude land from it. The court held that the appropriate standard of review was that applicable to legislative action. To reach that result, it distinguished cases finding adjudicatory action in similar exclusion proceedings conducted on the authority of other statutes because the governing law applied in those other cases established a standard requiring that exclusion of property from a district be based upon a lack of benefit while the applicable statute in *Hidden Valley* imposed no benefit standard. (256 Cal.App.2d at p. 282.) Since no statutory standard governed the agency action in the case before it, the court, in *Hidden Valley*, looked to the "dominant concern" of the administrative action to determine whether it should be reviewed by the standard applicable to adjudicatory or legislative proceedings. Since that dominant concern was one of the effect of the action upon persons

owning or living upon land throughout the district, the *Hidden Valley* court determined that the standard of review of legislative action was applicable. (256 Cal.App.2d at p. 280.)

*Hidden Valley* thus applies a two-pronged test in determining the ultimate nature of local agency action which possesses mixed adjudicatory and legislative characteristics. "Dominant concern" of the action is the primary consideration. If, however, a statutory standard controls the ultimate action, "dominant concern" gives way to a mechanistic determination that the action is adjudicatory.

The second prong of the *Hidden Valley* test was forced on the court by the need to reconcile its analytical frame and conclusion with the approach of our Supreme Court in *Albonico* v. *Madera Irr. Dist.* (1960) 53 Cal.2d 735, 739-740 [3 Cal.Rptr. 343, 350 P.2d 95] and with a series of Court of Appeal decisions also applying the substantial evidence test of review of adjudicatory determinations to matters involving exclusion of property from local taxing districts based upon a statutory standard of presence or absence of benefit to the property. (*Wilson* v. *Hidden Valley Mun. Water Dist., supra,* 256 Cal.App.2d 271, 282.) The Court of Appeal decisions which troubled the *Hidden Valley* court have since been disapproved by our Supreme Court in *Dawson* v. *Town of Los Altos Hills, supra,* 16 Cal.3d 676, 684. The high court characterizes them as based upon the mechanical distinction between the nature of review of action of local and statewide agencies which that court abandoned in *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28. (16 Cal.3d at pp. 684-685.)

While *Hidden Valley* is not mentioned in *Los Altos Hills,* the high court's disapproval of the Court of Appeal cases which forced the second prong of the *Hidden Valley* test is indicative that only the "dominant concern" aspect remains. The indication would be conclusive but for the failure of the Supreme Court to mention its own decision in *Albonico* in its sweeping disapproval of decisions applying the substantial evidence test in judicial review of local agency action including or excluding property from a local taxing district based upon the application of a statutory standard of presence or absence of benefit to the property. *Albonico,* however, applies the precise pre-*Strumsky* approach to determination of the standard of judicial review used by the Court of Appeal cases disapproved in *Los Altos Hills.* (53 Cal.2d 739, "This is a mandamus proceeding aimed at reviewing the propriety of the action of a *local* administrative board." Italics added.) *Albonico* is the expressed

underpinning of *Dumas* v. *City of Sunnyvale* (1965) 231 Cal.App.2d 796, 800-801 [42 Cal.Rptr. 302], one of the Court of Appeal decisions disapproved in *Los Altos Hills* (16 Cal.3d at p. 684). It seems a fair conclusion that disapproval of the Court of Appeal cases by our Supreme Court is equally disapproval by silence of its own prior decision applying the identical reasoning used by the lower appellate courts in the discredited decisions.

■ Developments since *Hidden Valley* thus establish that the presently applicable test of adjudicatory or legislative character of local governmental action which possesses characteristics of both is the dominant concern of the action taken. ■ Here the dominant concern of the action vacating Deep Valley Drive is the effect upon individuals involved rather than upon the community of Rolling Hills as a whole. The primary purpose of the action is to vest title and possession of property formerly occupied by the street in Properties and ultimately in May so that the shopping center may be developed. It is not a purpose to reroute Deep Valley Drive as a part of a general scheme to change traffic flow in the area. While the record reflects benefits to Rolling Hills in the form of increased revenue and implementation of its plan of development, those concerns are incidental to the primary benefit of the action to the developers of the shopping center. On the other side of the coin, the detriment of the project is not widely shared but rather strikes principally at persons owning or occupying property in the immediate area of the street which Rolling Hills proposes to vacate.

Since the dominant concern of the action here reviewed is narrow and private rather than broad and public, that action must be viewed as adjudicatory in nature despite any incidental public purpose and benefit. ■ The adjudicatory nature of the action requires that judicial review proceed pursuant to Code of Civil Procedure section 1094.5.

Analysis of case law dealing with the specific subject of vacation of public streets leads to the same conclusion. That analysis must be made in light of the history of statutes dealing with the subject. A statutory scheme for the vacation of county roads was adopted in 1872 (see Deering, Pol. Code, 1931, legislative analysis to pt. 3, tit. 6, ch. 2, art. 6, at § 2681). No specific standard for vacation is stated in the original act. Statutory authority for the vacation of city streets first appears in chapter LXXVI of the Statutes of 1889. Where the vacation process involved no assessment, the only condition upon city council action imposed by the

1889 act was that it be required by "public interest or convenience." (§ 1 of 1889 act renumbered by amendment as § 3220 of Street Opening Act of 1889.)

The standard of lack of necessity for present or future street use and the requirement of governing body action determining the applicable facts on evidence taken at a hearing has its apparent genesis in Political Code sections 2697 and 2698, dealing with county roads, enacted in 1915 and transferred in 1935 to the Streets and Highways Code as sections 957 through 959. The application of the standard to facts determined at a hearing was added without deletion of a preexisting procedure involving abandonment of streets by board of supervisors action based upon a report of citizen "road viewers" (see §§ 2684-2688, 1931 Pol. Code) and hence as an alternative procedure.

Streets and Highways Code section 8323, the statute of immediate concern in the case at bench, was enacted as part of the Street Vacation Act of 1941 (Sts. & Hy. Code, § 8300). While section 8323 imposes a statutory standard of lack of present or future necessity to be applied to facts determined by the city council from evidence at a hearing, it was, as originally enacted, an alternate procedure to that provided in the still extant act of 1889. (Sts. & Hy. Code, § 8308.) The latter act was repealed in 1963 (West, Sts. & Hy. Code, p. 653), leaving section 8323 as the only apparent present authority for city action vacating a public street.

Decisions dealing with vacation of a public street, where no statutory standard is applicable and where the only requirement is public convenience or necessity and no determination of facts is involved, declare that the body's action vacating the street is legislative in character. (See e.g., *Beals* v. *City of Los Angeles* (1943) 23 Cal.2d 381 [144 P.2d 839]; *Brown* v. *Board of Supervisors* (1899) 124 Cal. 274 [57 P. 82]; *People* v. *City of Los Angeles* (1923) 62 Cal.App. 781 [218 P. 63]; *People* v. *City of San Rafael* (1928) 95 Cal.App. 733 [273 P. 138]; *People* v. *City of Oakland* (1929) 96 Cal.App. 488 [274 P. 438].) The legislative action is reviewable only for actual or constructive fraud or action in excess of power to act. (*People* v. *City of Los Angeles, supra,* 62 Cal.App. 781.)

Other cases arising after the enactment of section 8323 or its equivalent statutes dealing with county action vacating public streets discuss only the issue of whether the action is for a public purpose. They do not deal with a determination of lack of present or future necessity either because the issue was not raised or because the procedure

employed by the governing board of the agency was an alternative not requiring the determination. (See e.g., *People* v. *City of Pomona* (1948) 88 Cal.App.2d 460, 462 [198 P.2d 959, 200 P.2d 176]; *Constantine* v. *City of Sunnyvale* (1949) 91 Cal.App.2d 278, 285 [204 P.2d 922].) Those cases also declare the action vacating the street to be legislative in nature.

Case law categorizing street vacation action as legislative where the action does not involve the application of ascertained facts to a statutory standard is not instructive on the nature of the same action based upon Streets and Highways Code section 8323 where facts determined from evidence at a hearing required by law must be applied against a standard declared by statute. Since the manner of determination is unrestricted, the action making the determination is clearly legislative and not mixed in nature so that the dominant purpose principle is inapplicable. Three cases exemplify the current state of California decisional law in the situation of section 8323.

In *Superior Bedding Co.* v. *Erenberg* (1961) 193 Cal.App.2d 86 [13 Cal.Rptr. 903], the Court of Appeal dealt with an action to specifically perform a contract calling for a conveyance of a strip of land if a city refused to abandon a portion of a street. The city agreed to vacate the portion only on condition that another segment of land be dedicated for street purposes. Concluding that the city's action was, in legal effect, a refusal to vacate the portion of the street, the court determined that the condition of the contract had occurred so that specific performance was compelled. Along the way, the court faced an argument that full compliance with the contract by the party seeking specific performance required that he bring a legal action to compel the city to vacate. The court disposed of the argument with language stating: "The taking of such action would not appear to be a necessary step in order to perform under the agreement since it has been consistently held in this state that a court will not review the action of a municipal authority except where there is fraud or a plain abuse of power." (193 Cal.App.2d at p. 91.) The court cited, for its proposition, cases arising before the enactment of the hearing, evidence, and factual determination prerequisites to vacation of a public street.

*Bowles* v. *Antonetti* (1966) 241 Cal.App.2d 283 [50 Cal.Rptr. 370] involves review by the Court of Appeal of a judgment on a petition for writ of mandate overturning action of a city vacating a public street and directing that the city council annul its action. The court discussed the propriety of the scope of relief extending beyond a declaration that the

council's original action was void and then determined the extent of factual support for the administrative action. Discussing the issue of validity of the portion of the trial court judgment directing the city council to annul its former action, the Court of Appeal said: "It is also recognized that vacating a street or a portion of a street is a legislative act . . . ." It cited 1889 act decisions in support of its language. (241 Cal.App.2d at p. 286.) In considering the remainder of the judgment, the court applied the test of review required by Code of Civil Procedure section 1094.5, without mentioning the section, and undertook an examination of the record before the city council to determine if its decision was supported by substantial evidence.

*Ratchford* v. *County of Sonoma* (1972) 22 Cal.App.3d 1056 [99 Cal.Rptr. 887] involves an action testing the validity of a county's determination to vacate a public street pursuant to Streets and Highways Code section 959. There the court held the action of the county's board of supervisors to be adjudicatory in nature and hence reviewable on "certiorari" or writ of review. (22 Cal.App.3d at pp. 1068-1069.)[1]

*Superior Bedding* is suspect by reason of its failure to consider statutes enacted after the decisions upon which it relies for its statement of the legislative character of street abandonment action by a municipality. The language is, moreover, not necessary to its decision. *Bowles* is authority in its actual approach to the problem for the application of 1094.5 review although its language, used in a different context, is to the contrary. *Ratchford* is direct authority for the use of 1094.5 review in the case at bench although it uses the "certiorari" terminology superseded by the Code of Civil Procedure's codification of what, prior to the statute, had come to be called "certiorarified mandamus." (Kleps, *Certiorarified Mandamus Reviewed,* 12 Stan.L.Rev. 554.)

*Ratchford* and *Bowles* are thus the persuasive authority. Their persuasion indicates that the action of the Rolling Hills City Council is reviewable pursuant to Code of Civil Procedure section 1094.5. *Topanga*

---

[1]Focusing on language in *Ratchford* describing the particular interest of the appellant in direct access to the vacated street (22 Cal.App.3d at p. 1069), Rolling Hills, May, and Properties argue that *Ratchford* is applicable only where the party seeking judicial review has an equivalent direct property interest affected by the administrative action. The argument confuses rights giving standing to seek judicial review with rights affected by the action vacating a street. The standing of the appellants in the case at bench has not been challenged. Direct rights of access of the library district and property owners in the immediate vicinity of the vacated portion of Deep Valley Drive were affected by the council action as was the right of the owners of the reversion in the land occupied by Deep Valley Drive.

requires that, in matters so reviewable, the administrative agency must make findings of fact in the detail there specified. Public Resources Code section 21168 engrafts review pursuant to Code of Civil Procedure section 1094.5 where governmental action based upon a discretionary determination of fact is taken after a legally required hearing at which evidence must be taken.

*Administrative findings concerning the requirements of Streets and Highways Code section 8323.* ■ A statement of a finding of the administrative agency in the terms of the ultimate requirement of a statute governing its action does not meet *Topanga's* test. There must also be findings of fact on "relevant sub-conclusions" supportive of the ultimate decision so that a reviewing court may trace and examine the agency's mode of analysis. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 516-517 and fn. 16.)

Here the Rolling Hills city council found only that Deep Valley Drive, as presently located, is unnecessary for present or future public street purposes. There are no findings on the sub-issues leading to the ultimate determination. We cannot tell, for example, whether the ultimate finding is based upon a sub-conclusion that existing streets other than Deep Valley Drive are adequate to absorb all traffic presently flowing on Deep Valley or upon the prospect of relocation. Both theories were argued to the trial court. We cannot, on the record here, determine the test applied by the city council in determining that Deep Valley Drive is not needed as a public street, now or in the future. Absent findings of those sub-issues or others leading to the determination of the ultimate statutory requirement, we cannot, on review, ascertain whether the elements of the city council action are supported by substantial evidence and hence cannot adequately review the administrative proceeding. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516.)

*Administrative findings concerning compliance with CEQA.* ■ Application of *Topanga's* requirement of administrative findings of fact to issues dealing with compliance with CEQA in a proceeding involving a hearing required by law in which evidence must be received and a discretion exercised in determining facts (Pub. Resources Code, § 21168) presents an equally difficult problem. The requirement must be construed in light of its purpose of aiding judicial review and of the nature of governmental action required by CEQA.

The EIR is not an action document. (*Kleist* v. *City of Glendale* (1976) 56 Cal.App.3d 770, 779 [128 Cal.Rptr. 781]; Pub. Resources Code § 21001, subd. (g); State Guidelines,[2] § 15012.) Its purpose is to inform governmental decision-makers and to focus the political process upon their action affecting the environment. (*Kleist* v. *City of Glendale, supra,* at p. 779.) ■ Where the adequacy of the EIR is questioned, it is independently reviewable on appeal from the agency action. (*People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 840-842 [115 Cal.Rptr. 67].)

■ Since the content of the EIR is independently reviewable for its adequacy, no purpose other than convenience is served by administrative findings of sufficiency of the report for its purpose of informing the decision-makers. Separation of powers precludes the propriety of judicial review of the political function served by the EIR and hence the necessity of findings upon material in it serving the political purpose. A statement of the ultimate fact that the EIR has been reviewed and considered adequately serves the purpose of CEQA in both areas.

There is one situation, however, in which the EIR serves a purpose beyond its basic function as the foundation for decision and the political process. It may, as in the case at bench, provide the basis for determination that a proposed project will not have a significantly adverse environmental effect. In that limited instance, determination of compliance with CEQA is like any other administrative action. If the process in which the EIR is employed is legislative in character, no findings are required. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 81, fn. 12 [118 Cal.Rptr. 34, 529 P.2d 66].) The Legislature has declared a different rule where compliance with CEQA is in issue in connection with a decision of a public agency made as a result of a proceeding which is adjudicatory in nature. Then the standards of review imposed by Code of Civil Procedure section 1094.5 are applicable. (Pub. Resources Code, § 21168.) Since *Topanga* holds that section 1094.5 review is not feasible without administrative findings of fact, *Topanga* compels the conclusion that findings in the detail there discussed are required to support the council's conclusion of lack of significant adverse environmental effect.

Thus, in the case at bench, administrative findings of fact on the sub-conclusions leading to the ultimate determination of lack of substantial adverse environmental effect are required.

---

[2]Title 14, California Administrative Code. Subsequent references to "Guidelines" similarly refer to the designated section of title 14 of the California Administrative Code.

*Sufficiency of Record to Support Conclusion
that Deep Valley Drive Was Vacated for a Public Purpose*

■ Streets and Highways Code section 8323, which requires a noticed hearing and the consideration of evidence to determine that a street is not needed presently or for the future before the street may be vacated, does not expressly impose the additional condition that the public interest be served by vacating a particular street. The requirement of public purpose is one imposed primarily by case law. (See e.g., *People v. City of Los Angeles, supra,* 62 Cal.App. 781.)

■ Since the process of determination of public interest in vacating a street does not involve a legally required hearing at which evidence must be taken and discretion exercised in determining facts, the process is of a legislative rather than adjudicatory character. Hence "judicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law." (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83], quoted in *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 34, fn. 2.) ■ Here the city council followed the procedure required by statute. The presentation to the council of the benefits to Rolling Hills supplies a basis for the decision vacating Deep Valley Drive which refutes any contention that the action is arbitrary, capricious, or totally lacking in factual support.

*Adequacy of EIR*

■ The parties opposing the project contend that the EIR is legally inadequate in its treatment of alternatives and mitigating measures and responses to comments relating to traffic congestion, energy consumption, and impact of the project elsewhere.

*Alternative and Mitigating Measures*

Subdivision (d) of section 15143 of the Guidelines stated, before amendment in 1975, that the EIR must: "Describe any known alternatives to the project, which could feasibly attain the basic objectives of the project, and why they were rejected in favor of the ultimate choice. The specific alternative of 'no project' must also always be evaluated, along with the impact. Attention should be paid to alternatives capable of

substantially reducing or eliminating any environmentally adverse impacts, even if those alternatives substantially impede the attainment of the project objectives, and are more costly."

The EIR here considered the alternatives of no project, developing the property as 10 separate parcels for commercial use, multi-family residential development, and development as an office center. In a segment entitled "mitigating measures," the report suggests an alternative involving the continued existence of Deep Valley Drive with two department stores and "mall stores" located south of Deep Valley and parking facilities to the north, with pedestrian bridges connecting the two segments. Commenting on the draft EIR, the Sierra Club raised the alternative of modification of the manner of construction of the project to reduce "thermal intensity" from "300,000 BTU/sq.ft./yr." to 150,000. The final EIR contains a response from May to the effect that design changes necessary to that objective would require "a return to pre-1960 design using large open spaces with fluorescent or metallic halide light sources" which would place the center at a competitive disadvantage.

The opponents of the project contend that the final EIR is inadequate for failure to deal with reducing the size of the proposed shopping mall so as to eliminate the need to vacate Deep Valley Drive, reduce potential traffic congestion, reduce energy consumption, reduce growth inducing impact, and alleviate impact upon "semi-rural atmosphere." The opponents contend further that the EIR fails adequately to discuss the alternatives of reducing the consumption of electrical energy by the proposed shopping mall and eliminating its enclosed air conditioned portion as unnecessary "from a climate standpoint."

■■■■ Guidelines section 15143 must be construed in light of the informational purpose of the EIR to the city council which acts on the proposed project and to the public which will hold the members of the council politically accountable for their action. So construed, section 15143 does not require that every conceivable alternative be stated in the report nor that the alternatives that are stated be described in every possible detail. Section 15143, for example, is not reasonably construed to require that the alternative of outhouses to plumbing be considered, or that the plumbing of the project be described exquisitely. What is required is that the EIR give reasonable consideration to alternatives in light of the nature of the project and that those alternatives be described in sufficient detail to serve the informational purpose of the report to the governmental body which will act and the public which will respond to the action through the political process.

 Here the EIR is legally adequate to meet the requirements of Guidelines section 15143 as so construed. Inherent in the "mitigating measure" outlining construction of the project so as not to require the vacation of Deep Valley Drive is the option of construction of a commercial area smaller in square footage than that encompassed in May's original proposal. The description of the option as a "mitigating measure," rather than an "alternative," is not significant. The response of May to the Sierra Club's comment on electrical energy consumption included in the final EIR is similarly an adequate notation and discussion of alternatives when Guidelines section 15143 is given the construction dictated by the purpose of the EIR.

*Response to comments.* Section 15146 of the Guidelines provided before amendment in 1975: "(a) The Final EIR shall consist of the Draft EIR . . . and . . . the comments received through the consultation process . . . either verbatim or in summary, and the response of the Lead Agency to the significant environmental points raised in the review and consultation process. [¶] The response of the Lead Agency to comments received may take the form of a revision of the Draft EIR or may be an attachment to the Draft EIR. The response [of the Lead Agency] shall describe the disposition of significant environmental issues raised (e.g., revisions to the proposed project to mitigate anticipated impacts or objections). In particular the major issues raised when the Lead Agency's position is at variance with recommendations and objections raised in the comments must be addressed in detail giving reasons why specific comments and suggestions were not accepted, and factors of overriding importance warranting an override of the suggestions."

The opponents of the project argue that the final EIR in the case at bench fails to satisfy the requirements of section 15146. They contend that the report is inadequate in its response to comments relating to potential traffic congestion, energy consumption levels, and impact of the shopping mall on areas outside Rolling Hills.

The bulk of the EIR's 459 pages is devoted to the subject of traffic congestion. As first proposed by Properties and May, the project called for vacation of Deep Valley Drive. The draft EIR suggested that Deep Valley Drive be retained in essentially its existing location with the project built on both sides of it and the two segments connected by overhead pedestrian bridges. Responses to the draft EIR during the review period objecting to it on the ground of traffic congestion led the

city council to approve the plan by which Deep Valley Drive would be vacated but relocated. That decision is clearly based upon May's presentation that otherwise the project is not economically feasible. The decision is equally clearly one made after consideration of an enormous amount of data collected by traffic experts and opinions expressed by them. The report thus contains a description of the mitigating measure of future relocation of Deep Valley Drive responsive to adverse comment with respect to traffic congestion and the reason why that measure was adopted.

The final EIR contains reports of experts on energy consumption which, not untypically in the case of hired experts, reach conflicting conclusions each, of course, in favor of the side hiring the gun. Experts acting for opponents of the project opined that it would result in excess consumption of energy. Experts retained by Properties and May reached the opinion that the project would result in a net energy saving by reducing the miles travelled by residents in the vicinity of the project when engaged in shopping excursions. The Sierra Club pointed to deficiencies in the data used by the developers' experts in reaching their conclusion. In response, new energy calculations were presented. The opponents of the project contend that the EIR and city council action leave the dispute among the experts unresolved and hence that the dictates of section 15146 of the Guidelines are not satisfied.

 Section 15146 does not require that the body acting on an EIR correctly solve a dispute among experts. The section requires only that the report be responsive to comments received and that objections be addressed. Here the expert opinion offered by the developers is the response to that presented in opposition to the project, and the decision of the city council to accept the opinion favoring the project is the address to the objection to it.

The opponents of the project contend that the final EIR fails to respond adequately to comment concerning the project's effect upon the surrounding area. Palos Verdes responded to the draft EIR by opposing the project for, among other reasons, its purported incompatibility with the policies and goals of the Palos Verdes Peninsula cities and the "policy of promoting the status quo and discouraging intensive development." Responsive material in the final EIR supports the opinion that increased tax revenues of various governmental districts will result in a net environmental improvement to the area surrounding the project both within and without Rolling Hills. The draft EIR opines that the project will not induce area growth.

The material in the final EIR contrary to the Palos Verdes opposition to the project is responsive to the opposition. While the EIR and city council proceedings are silent on why the position of the draft EIR and the proponents of the project and not that of the opponents should be accepted, the record nevertheless meets the substance of the requirements of section 15146 of the Guidelines. Here again opinion and not fact is in issue. By determining to proceed as it did, the city council inherently accepted the opinion supporting the view that the surrounding area would not be affected adversely.

### Charge for Copies of EIR

■ Subdivision (a) of section 15163 of the Guidelines provides: "The Lead Agency, after preparing an EIR or other environmental document described in these Guidelines, is responsible for making such documents available to the public for inspection. Members of the general public requesting copies of the EIR may be charged for the actual cost of reproducing that copy." While not questioning the proposition that the EIR here involved was made available to the public for inspection, petitioners contend that the city charged for copies at the rate of 25 cents per page, a figure in excess of actual cost.

Petitioners' contention is not supported by the record. The only evidence produced by petitioners in support of their contention is that the "machine meter cost" to the city is 3.42 cents per copy. No evidence of the city's labor cost, indirect expense or burden was produced. Since of necessity substantial labor cost, indirect expense and burden is involved in computation of cost per unit of copying documents, petitioners failed in their proof.

### Untimely Circulation of Final EIR

■ The final act in acceptance of an EIR is a notice of determination filed pursuant to Public Resources Code section 21152. There is a 30-day statute of limitations from the time the notice of determination is filed upon action seeking review of the public body's compliance with CEQA.

Here a notice of determination was filed on March 28, 1974. From and after March 29, a copy of the final EIR was available for public inspection in the office of the City Clerk of Rolling Hills, and copies of the document could be obtained at a cost of 25 cents per page. Copies of the

final EIR were not received by the city from its printer until April 8. On that date, printed copies of the report were distributed to various public agencies and libraries in the area.

Petitioners contend that the delay in circulating the printed copies is a violation of the spirit of CEQA. While they assert no prejudice to their ability to file the lawsuits which are the cases at bench, petitioners contend that the city clerk must be penalized for her delay by action of this court declaring all action on the EIR void. No violation of CEQA or the Guidelines is demonstrated. The final EIR was available for public inspection and copying at cost the day after notice of determination was filed. Assuming a violation, no prejudice from the delay has been shown, so that the violation cannot be the basis of judicial action declaring the EIR void.

### Validity of Resolution No. 739

In addition to adopting resolution No. 738 vacating Deep Valley Drive for the reason that it was not necessary presently or in the future as a public street, the city council also adopted resolution No. 739 summarily vacating Deep Valley Drive because it had been superseded by relocation. The trial court found that resolution No. 739 is void for failure of a statutory condition precedent. Rolling Hills, May, and Properties have appealed from that portion of the judgment.

The trial court was correct in its conclusion. Streets and Highways Code section 1930 provides: "The city council . . . of any city may . . . summarily vacate . . . any portion of a street, . . . which . . . has been superseded by relocation . . . ." Here, while the city purported to act with the authority of section 1930, the condition precedent to vacation stated in that statute had not occurred. The vacated portion of Deep Valley Drive had not been superseded by relocation. While resolution No. 738 called for relocation of the street in the future, relocation was not an existing fact.

### Disposition

The portion of the judgment declaring that resolution No. 739 of the City of Rolling Hills Estates is void is affirmed. The remainder of the judgment is reversed. The trial court is instructed to remand the matter to the Rolling Hills City Council for the findings of fact required by this opinion and to take any other action indicated by the record after

remand. Plaintiffs-appellants in case No. C86927 and plaintiffs-appellants in case No. C86929 are to recover their costs on appeal.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied July 27, 1976.