SOUTH GWINNETT VENTURE, a partnership composed of South Gwinnett Apartments, Inc., et al., Plaintiffs-Appellants,

v.

W. R. (Dudge) PRUITT et al., Defendants-Appellees.

ROCKBRIDGE ASSOCIATES, LTD., a Georgia Limited Partnership, Plaintiff-Appellant,

v.

W. R. (Dudge) PRUITT et al., Defendants-Appellees.

Nos. 71–3420, 71–3421.

United States Court of Appeals, Fifth Circuit.

April 4, 1973.

Rehearing Granted Dec. 3, 1973.

---

Robert F. Cook, Dean Booth, Atlanta, Ga., for plaintiffs-appellants.

Homer M. Stark, Lawrenceville, Ga., for defendants-appellees.

Before WISDOM and INGRAHAM, Circuit Judges and BOOTLE, District Judge.

INGRAHAM, Circuit Judge:

These appeals arose from suits filed in the district court by the respective plaintiffs, each against the Commissioners and the Chief Building Inspector of Gwinnett County, Georgia, each praying that certain portions of the zoning ordinance enacted by the Commissioners be declared unconstitutional and that the Chief Building Inspector issue building permits for the constructions of apartments upon the subject property. The district court dismissed the suits upon the motions of the defendants, holding that the rezoning applications called for a quasi legislative judgment by the zoning board, and as such the district court was without subject-matter jurisdiction to review the actions for anything more than arbitrariness and interest on the part of the board members.

The use of non-record secret evidence by the Gwinnett County Commissioners in denying appellants' application for the rezoning of certain tracts of land from single family residential classification to multi-family apartment use designations has projected purely local land use questions into a federal forum.

Contending that their applications had been denied by the Commissioners on evidence dehors the record and that the Commissioners' reliance on such evidence deprived them of due process, the appellants brought suit against the County Commissioners in federal district court asserting jurisdiction under 28 U.S.C. § 1331(a). The district court, noting that federal courts are properly loathe to stretch their limited jurisdiction to become super zoning boards of appeal, found the denial of an application for rezoning to be a quasi-legislative act. As such, the court reasoned it was not impermissible for the quasi-legislators to use non-record materials in exercising their judgment. Consequently, the court dismissed appellants' complaint. 341 F.Supp. 703 (N.D.Ga., 1971).

We differ in only one salient regard from the decision of the district court. Our difference concerns the nature of an application for the rezoning of a tract of land. As we recently noted in Higginbotham v. Barrett, 473 F.2d 745 (5th Cir., 1973) [1973]:

"The law is settled that the zoning of property, including the preparation of comprehensive land use plans, involves the exercise of judgment which is legislative in character and is subject to judicial control only if arbitrary and without rational basis. Shenk v. Zoning Commission of the District of Columbia, 142 U.S.App.D.C. 267, 440 F.2d 295, 297; Diedrich v. Zoning Commission of the District of Columbia, 129 U.S.App.D.C. 265, 393 F.2d 666; City of St. Paul v. Chicago, St. Paul, Minneapolis and Omaha Railway Company, 8 Cir., 1969, 413 F.2d 762, 766–767. Cf. Goldblatt v. Town of Hempstead, 1962, 369 U.S. 590, 594–595, 82 S.Ct. 987, 8 L.Ed.2d 130."

The adoption of a legislative plan for the entire community must be distinguished from the treatment which a specific tract of land receives when its owner petitions for reclassification under that plan. As the record in this case demonstrates, consideration of that petition is an exercise of legislative power in a case by case adjudicative setting. *Compare,* Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) with Bi-Metallic Inv. Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). *See,* Hot Shoppes, Inc. v. Clouser, 231 F.Supp. 825 (D.C., 1964), affirmed 120 U.S. App.D.C. 353, 346 F.2d 834 (1965); and Donovan v. Clarke, 222 F.Supp. 632 (D.C., 1963). Cf. State ex rel. Ludlow v. Guffey, 306 S.W.2d 552 (Mo., 1957); Morton v. Mayor and Council of Clark Township, 102 N.J.Super. 84, 245 A.2d 377 (1968). *See, generally,* K. Davis Administrative Law Text. Thus distinguished from the legislative action of adopting a comprehensive zoning plan, the adjudicative decision inherent in tract rezoning requires the decision maker to adhere to concepts of minimal due process. Hornsby v. Allen, 326 F.2d 605 (5th Cir., 1964); Hot Shoppes, Inc. v. Clouser, *supra*; Donovan v. Clark, *supra*. Here, appellants' complaint alleged that rezoning of the property had been denied by the Commissioners without a statement of their reasons and by recourse to evidence which was not in the record. Such administrative action has long been condemned, Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); United States v. Abilene & Southern Ry. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924); Interstate Commerce Commission v. Louisville & Nashville RR Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431 (1913); Hornsby v. Allen, *supra*, and we do so here.

The orders of the district court are reversed and the causes remanded for proceedings consistent herewith.

BOOTLE, District Judge (dissenting):

I respectfully dissent. I would affirm for all reasons stated by the Trial Court in his memorandum opinion, Rockbridge Associates, Ltd. v. Pruitt, 341 F.Supp. 703 (N.D.Ga.1971), plus an additional reason to be stated. I agree with the Trial Court "that plaintiff was afforded procedural due process in connection with the various hearings before local zoning authorities" and that "there is nothing to indicate that the decision of the Commissioners could be found to be arbitrary." The majority opinion groups these two cases together and over-reacts, I think, to the contention of one of the plaintiffs that as to it the County Commissioners in star chamber fashion used non-record secret evidence. I, naturally, have examined that charge carefully. First, it must be noted that only Rockbridge Associates, Ltd. makes this contention. South Gwinnett Venture's case was considered by the Commissioners on November 24, 1970, and again on December 1, 1970, and there is no contention that any secret evidence was used in the consideration of that case. The Rockbridge case was considered by the Commissioners earlier on August 25, 1970 and September 9, 1970, and it is in connection with these earlier hearings that Rockbridge claims the use of secret evidence. Secondly, I think this charge is unsubstantiated. What happened is this: at the August 25, 1970 hearing one of the Commissioners moved to "table the decision for two weeks so that he could obtain additional studies and consult with the Engineering Department." This does not sound star chamberish. His intentions were announced in open meeting. The postponement was for two weeks. The Engineering Department of Gwinnett County is probably not so large that plaintiffs could not have ascertained whatever information it furnished the Commissioners had they so desired. Nor does any reason appear why they did not inquire at the resumed hearing on September 9, 1970 as to what

additional studies, if any, the Commissioners had obtained. Rockbridge argues that the Commissioners have refused to disclose the contents of their conversation with the Engineering Department and the additional studies. Nothing in the record substantiates this argument. Nor was there any request by plaintiffs for any more complete or detailed findings of fact by the Commissioners. All this suggests that plaintiffs' desire to make a federal case exceeded their fear of deprivation of due process.

An additional reason not specifically assigned by the Trial Court for dismissing the complaint is failure of the plaintiffs to exhaust their administrative remedies. While a litigant normally need not exhaust his state "judicial" remedies, normally he must exhaust his state "legislative" or "administrative" remedies before challenging state action in federal court. *See* Wright, Federal Courts, § 49, p. 187 (2d ed.). Under the applicable zoning ordinance plaintiffs had the right to appeal to the Zoning Board of Appeals from any decision of the Chief Building Inspector, and said Board of Appeals is empowered:

"1. To hear and decide appeals when it is alleged there is error in any order, requirement, decision or determination made by the Chief Building Inspector in the enforcement of this Zoning Resolution.

"2. To hear and decide requests for the Special Exceptions of the Zoning Resolution upon which the Zoning Board of Appeals is required to pass.

"3. To authorize, upon appeal in specific cases, such variances from the terms of the Zoning Resolution as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the Zoning Resolution will, in an individual case result in unnecessary hardship, so that the spirit of the Zoning Resolution shall be observed, public safety and welfare secured and substantial justice done. Such variances may be granted in such individual cases of unnecessary hardship upon a finding by the Zoning Board of Appeals that:

"a. There are extraordinary and exceptional conditions pertaining to the particular property in question because of its size, shape or topography, and

"b. the application of the Resolution to this particular piece of property would create an unnecessary hardship, and

"c. such conditions are peculiar to the particular piece of property involved, and

"d. such conditions are not the result of any actions of the property owner, and

"e. relief, if granted, would not cause substantial detriment to the public good nor impair the purposes or intent of this Resolution, and

"f. no variance may be granted for a use of land or building or structure that is prohibited by this Resolution.

"4. In exercising the above powers, the Zoning Board of Appeals may, in conformity with the provisions of this Resolution, reverse or affirm, wholly or partly, or may modify the order, requirements, decisions or determination from which the appeal is taken and, to that end, shall have all the powers of the Chief Building Inspector from whom the appeal is taken and may issue or direct the issuance of a Building or Occupancy permit."

The foregoing itemization of instances in which the Zoning Board of Appeals might grant variances from the terms of the Zoning Resolution when read in connection with Article I of the Zoning Resolution stating its objectives:

" . . . [F]or the purposes of promoting the health, safety, morals, convenience, order, prosperity or the general welfare of the present and future inhabitants of Gwinnett County; of lessening congestion in the streets; securing safety from fire, panic and

other dangers; providing adequate light and air; preventing the overcrowding of land, avoiding both undue concentration and urban sprawl; facilitating the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; protecting · property against blight and depreciation; encouraging the most appropriate use of land, buildings and other structures throughout the County; securing economy in government expenditures; and for other purposes, all in accordance with a comprehensive plan for the development of Gwinnett County, the County Commissioners of Gwinnett County do hereby ordain and enact into law the following Articles and Sections of the Zoning Resolution of Gwinnett County, Georgia"

fully answers plaintiffs' contention of lack of standards. *See* Atlanta Bowling Center, Inc. v. Allen, 389 F.2d 713 (5th Cir. 1968).

Granted that what is unquestionably a legislative function, the adoption of a general zoning plan or the zoning of an entire area, becomes, next day, to some extent a judicial function, when one of the affected property owners petitions for relief from the zoning restriction, certainly the metamorphosis is not complete. What was all legislative one day remains at least quasi-legislative the next day. *See* Higginbotham, Etc. v. Barrett, et al., 473 F.2d 745 (5th Cir. 1973) and Donovan v. Clarke, 222 F. Supp. 632 (D.C.1963). The requirements of procedural due process are not procrustean. The Supreme Court said in Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L. Ed.2d 1230, 1236 (1961) " . . . consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." See also Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In

Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), it was held that in some instances, to-wit: suspension of students from a tax-supported college, procedural due process does not require "a full-dress judicial hearing, with the right to cross-examine witnesses." Under the facts of this case it was not an infirmity of Constitutional proportions for one of the Commissioners to move for an adjournment of two weeks stating his intention to obtain additional studies and consult· with the Engineering Department, particularly since no objection was voiced by petitioners at the public hearing at which that announcement of intention was made, and since no effort was made by plaintiffs to obtain information as to the content of such studies or consultation until after the filing of this suit.

Public hearings were held. Plaintiffs attended. At least one of them, South Gwinnett Venture, was accompanied and represented by counsel. The other plaintiff, whether or not accompanied and represented by counsel, fully participated in the public hearing by presenting evidence.

The Trial Court recognized that plaintiffs were entitled to due process and concluded specifically that they had not been deprived thereof. A hearing was held in the court below at which plaintiffs clarified their contentions and the facts in the case. Thus the court was not acting solely on pleadings but was fully informed. The complaints were dismissed not for lack of jurisdiction but for failure to present any substantial federal question.

As was said in Confederacion de la Raza Unida v. City of Morgan Hill, 324 F.Supp. 895 (N.D.Cal.1971): "the courts have traditionally recognized that zoning matters are of particular concern to, and the province of, the local communities involved and . . . should interfere with the judgment of the local authorities only in the most extreme cases, and under the most extreme circumstances. This attitude goes back at least as far as Village of Euclid v. Ambler

Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 . . . ." And it was said in Donovan v. Clarke, *supra,* 222 F.Supp. at 634: "Such a determination (on the petition of a resident for a change in the zoning of his property) is subject to review by the courts, not on the merits of the issues presented, but as to whether the action was justified or was capricious, arbitrary, unreasonable or discriminatory." And this court said in Higginbotham, etc. v. Barrett, et al., *supra,* "The law is settled that the zoning of property, *including* the preparation of comprehensive land use plans, involves the exercise of judgment which is legislative in character and is subject to judicial control only if arbitrary and without rational basis." (Emphasis added). The quoted holding indicates that zoning *in general,* and not just the preparation of comprehensive land use plans is a legislative function.

Even in a criminal trial where the requirements of due process are *strictissimi juris* a perfect trial is not demanded, only a fair trial. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L. Ed. 593 (1953); United States v. Rhoden, 453 F.2d 598 (5th Cir. 1972).

The case of Hot Shoppes, Inc. v. Clouser, 231 F.Supp. 825 (D.C.1964), relied upon by appellants is easily distinguishable on two grounds: first, there the Board of Zoning Adjustment violated the detailed regulations governing its own procedure; and, second, the members of the Board conducted an inspection of the premises and failed to set forth the facts which it claimed it discovered as a result of the inspection. The court said "plaintiff did not know that such inspection had taken place, and had no opportunity to question or refute the results of such inspection." That is not the case *sub judice.* Our appellants knew that one Commissioner planned to obtain additional studies and to consult with the Engineering Department prior to the next meeting. It would have been an easy matter for our appellants to have attended the next regular meeting, to have requested that Commissioner to inform them as to exactly what new information, if any, he had obtained through the additional studies and from his consultation with the Engineering Department, and to have requested, if needed or desired, an opportunity to refute the same.