[L.A. No. 31205. Dec. 18, 1980.]

ARNEL DEVELOPMENT COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF COSTA MESA, Defendant and Respondent.

SOUTH COAST PLAZA, Plaintiff and Appellant, v.
CITY OF COSTA MESA, Defendant and Respondent.

**COUNSEL**

Rutan & Tucker, Leonard A. Hampel, Robert S. Bower, Latham & Watkins, Robert E. Currie and Robert K. Break for Plaintiffs and Appellants.

Robert Myers, John E. McDermott, Richard A. Rothschild, Crystal Sims, Michael E. Wine, Stearns, Kim & Willens, William N. Willens, Loring E. Jahnke, Richard J. Reynolds, Carlyle W. Hall, Jr., and Carolyn Burton as Amici Curiae on behalf of Plaintiffs and Appellants.

R. R. Campagna, City Attorney, Thomas C. Wood, Assistant City Attorney, and Mark J. Huebsch, Deputy City Attorney, for Defendant and Respondent.

George Deukmejian, Attorney General, E. Clement Shute, Jr., Assistant Attorney General, Daniel P. Selmi, Deputy Attorney General, George Agnost, City Attorney (San Francisco), Burk E. Delventhal, Diane L. Hermann, Alice Suet Yee Barkley, Deputy City Attorneys, John W. Scanlon, City Attorney (Hayward), Burt Pines, City Attorney (Los Angeles), Frederick W. Clough, City Attorney (Santa Barbara), Robert J. Logan, City Attorney (San Jose), Daniel J. Curtin, Jr., City Attorney (Walnut Creek), Carter J. Stroud, City Attorney (Alameda), Ronald A. Zumbrun, Thomas E. Hookano, Howard E. Susman, Frank Lee Crist, Jr., Crist, Crist, Griffiths, Bryant, Schulz & Biorn and Martin Wolff as Amici Curiae.

**OPINION**

**TOBRINER, J.**—Plaintiff Arnel proposed to construct a 50-acre development consisting of 127 single-family residences and 539 apartment

units.[1] Objecting to this proposal, a neighborhood association circulated an initiative rezoning the Arnel property and two adjoining properties (68 acres in all) to single family residential use. When the voters approved the initiative, Arnel instituted the instant action.[2] The superior court upheld the initiative: the Court of Appeal reversed. We transferred the cause here on our own motion[3] to examine further the holding of the Court of Appeal that the rezoning of specific, relatively small parcels of privately owned property is essentially adjudicatory in nature, and thus cannot be enacted by initiative.

As we shall explain, California precedent has settled the principle that zoning ordinances, whatever the size of parcel affected, are legislative acts. We find no warrant for departing from that principle. A decision that some zoning ordinances, depending on the size and number of parcels affected and perhaps on other factors, are adjudicative acts would unsettle well established rules which govern the enactment of land use restrictions, creating confusion which would require years of litigation to resolve. Since such a decision is unnecessary to protect either the rights of the landowners or the public interest in orderly community planning and development, we adhere to established precedent and conclude, accordingly, that the ordinance rezoning plaintiffs' property was a legislative act.

Our opinion therefore holds that the Court of Appeal erred in holding the initiative ordinance invalid on the ground that it is adjudicative in nature. Plaintiffs raised numerous other objections to the initiative, however, which were not resolved by the Court of Appeal and not fully argued before this court. Accordingly our order retransfers this cause to the Court of Appeal for resolution of those issues.

---

[1]The site of the proposed development is owned by plaintiff Genji Kawamura. Plaintiffs Arnel Development Company (a corporation), A & R (a general partnership), R & A (a limited partnership), Harry Rinker, and George Argyros, are lessees associated in the proposed development of the property. We refer to these parties collectively as Arnel.

[2]South Coast Plaza, owner of one of the other properties rezoned by the initiative, also filed suit for a declaration of the invalidity of the initiative. The Arnel and South Coast actions have been consolidated for trial and appeal.

[3]Apparently believing that his duty is to represent the city council instead of the voters of Costa Mesa, the city attorney did not defend the initiative. When the Court of Appeal held the initiative invalid, he did not petition this court for hearing. Because a hearing here appeared necessary to secure uniformity of decision and settle an important question of law (see Cal. Rules of Court, rule 29(a)), we transferred the cause to this court. (See Cal. Rules of Court, rule 28(a).)

We turn now to a more detailed statement of the factual background of this litigation. The initiative in question seeks to rezone three contiguous undeveloped properties located in the City of Costa Mesa[4]—the Arnel property (50 acres), the South Coast Plaza property (13 acres), and the Roberts property (4.6 acres). Under the city's general plan, as amended in 1976, 8.5 acres of the Arnel property was designated as low density residential; the balance of the approximately 68 acres affected by the initiative was designated medium density residential. In November of 1976 the city approved a specific plan for development of the Arnel property, and pursuant to that plan, rezoned the property PDR-LD (planned development residential-low density) and PDR-MD (planned development residential-medium density). The South Coast Plaza and Roberts properties retained A-1 (general agricultural) zoning.

On July 18, 1977, the city approved development of the Arnel property and a tentative tract map. In its final form, the Arnel project was to consist of 127 single-family residences on approximately 23 acres and 539 apartment units on a similar acreage. Projected apartment rentals indicated that the project was intended primarily for moderate income housing.

Shortly after the city's approval of the Arnel development, the North Costa Mesa Homeowner's Association circulated an initiative petition to rezone the Arnel, South Coast Plaza, and Roberts properties to R-1 (single-family residential) zoning. At the municipal election of March 7, 1978, the voters adopted the initiative by a narrow majority.[5]

The city thereafter refused to process the final tract map or applications for building permits for the Arnel project. Arnel filed suit for mandate, injunctive relief, and declaratory relief. On the same day,

---

[4]Costa Mesa is a general law city. Some of the discussion in this opinion may not be fully applicable to charter cities.

[5]The initiative ordinance reads as follows: "The people of Costa Mesa do ordain that the following described land within the City of Costa Mesa shall be zoned R-1 Single Family Residential District and the use thereof restricted to Single-Family Dwelling Units. All that land located within the area bounded by Bear Street on the East, Sunflower Avenue on the North, South Coast Drive on the South, and Tracts numbered 7557 and 7718 on the West (tracts 7557 and 7718 are commonly known as 'The Greenbrook Tract') together with all that land north of the San Diego Freeway and west of Bear Street included within the Tentative Map of Tract 9936 for Arnel Development Company."

South Coast Plaza filed a separate action for declaratory relief. Pursuant to stipulation the actions were consolidated for trial.

The trial court rejected the numerous contentions raised by the plaintiffs and rendered judgment upholding the validity of the initiative. The Court of Appeal reversed, holding that the rezoning of specific, relatively small parcels of private property is an act adjudicatory in nature, and therefore cannot be accomplished by initiative.[6] We transferred the cause to this court for further consideration of that issue.

Numerous California cases have settled that the enactment of a measure which zones or rezones property is a legislative act. California courts have so held in cases permitting zoning by initiative (*Associated Home Builders etc. Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973]; *Bayless* v. *Limber* (1972) 26 Cal.App.3d 463 [102 Cal.Rptr. 647]), in cases upholding zoning referendums (*Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826 [323 P.2d 71]; *Dwyer* v. *City Council* (1927) 200 Cal. 505 [253 P. 932]), and in cases involving other issues which distinguish between adjudicative and legislative acts (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990] (scope of judicial review); *Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934 [162 Cal. Rptr. 210] (scope of judicial review); *Ensign Bickford Realty Corp.* v. *City Council* (1977) 68 Cal.App.3d 467 [137 Cal.Rptr. 304] (findings); *Hilton* v. *Bd. of Supervisors* (1970) 7 Cal.App.3d 708 [86 Cal.Rptr. 754] (sufficiency of evidence)).

The cases draw no distinctions based on the size of the area or the number of owners. Some of the cases involved measures which rezoned a substantial part of the city (e.g., *San Diego Bldg. Contractors Assn.* v. *City Council, supra,* 13 Cal.3d 205); some rezoned areas roughly comparable to the 68 acres at issue here (e.g., *Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453); many involved parcels much smaller than 68 acres (*Dwyer* v. *City Council, supra,* 200 Cal. 505 (proposed site for poultry farm owned by University of California, said to constitute one five-hundred-fiftieth of the City of Berkeley); *Toso* v. *City of*

---

[6]Only ordinances which involve an exercise of legislative power may be enacted by initiative. (*Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129 [222 P.2d 225]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633] and cases there cited.)

*Santa Barbara, supra,* 101 Cal.App.3d 934 (single lot); *Ensign Bick-
ford Realty Corp.* v. *City Council, supra,* 68 Cal.App.3d 467 (single
lot); *Hilton* v. *Bd. of Supervisors, supra,* 7 Cal.App.3d 708 (5 acres);
cf. *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448 [85 Cal.Rptr.
809, 467 P.2d 537] (location of subdivision access road a legislative act
subject to referendum); *Karlson* v. *City of Camarillo* (1980) 100 Cal.
App.3d 789 [161 Cal.Rptr. 260] (amendment to general plan a legisla-
tive act although it affects only 2 lots, of 10 and 14.75 acres)). Thus
whatever the legal controversy and whatever the size or ownership of
the land involved, every California decision on point (and there are
many more than the few cited in this paragraph) has held that the en-
actment or amendment of a zoning ordinance is a legislative act.

Of the various cases cited, *Dwyer* v. *City Council, supra,* 200 Cal.
505, is the closest on point. The City of Berkeley rezoned a single small
parcel owned by the University of California to permit operation of an
experimental poultry farm. Plaintiffs petitioned for a referendum, and
sought mandate to compel the city to submit the measure to the voters.
Defendants argued that the referendum was improper because the mea-
sure rezoned only a small area and affected only persons living in the
vicinity of the lot—essentially the same argument presented by the
plaintiffs in the present case. Rejecting that argument, the court stated
that "If the comprehensive zoning law districting all portions of the city
were before us, it could not be successfully contended that the ordi-
nance would not be subject to the referendum. . . . A zoning ordinance
as amended becomes in effect a different ordinance. Even if it be grant-
ed that a reclassification of an area as small as that involved in the
instant case cannot be said to effect a new scheme, the same rule must
necessarily be followed as would be applied if a larger area had been re-
classified, and it may be observed that a piecemeal rezoning of small
areas may result in a plan differing in vital particulars from that origin-
ally contemplated. In view of the substantial interest which the electors
of the entire municipality have in its zoning scheme, it cannot be held
that because residents of the particular locality rezoned may be more
immediately and apparently affected than are residents of other por-
tions of the city, the broad initiative and referendum provisions of the
charter and constitution do not apply to an amendment of the general
zoning law which reclassifies a portion of the city's territory." (200 Cal.
at pp. 514-515.)

*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, followed the
same reasoning. "The amendment of a legislative act is itself a legisla-

tive act," we said. "The power to legislate includes by necessary implication the power to amend existing legislation....[W]here, as here, the council amends a zoning ordinance so as to exclude.from a particular zone property previously included in such zone, its act in amending is a legislative act and not an administrative act." (49 Cal.2d at p. 835.)[7]

Neither *San Diego Bldg. Contractors Assn.* v. *City Council, supra,* 13 Cal.3d 205, nor *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605 [156 Cal.Rptr. 718, 596 P.2d 1134], points to a departure from the settled rule that rezoning is a legislative act. *San Diego* held that establishment of a 30-foot height limitation on buildings within a coastal zone was a zoning ordinance, and consequently a legislative measure which could be enacted by initiative. Although our opinion described the initiative as a "general" legislative act (13 Cal.3d at p. 212), we did so to distinguish the great number of more limited "'administrative' zoning decisions, such as the grant of a variance or the award of a conditional use permit, which are adjudicatory in nature." (*Ibid.*) The decision thus conforms to established rules that zoning amendments are legislative, but administrative decisions, such as variances and use permits, are adjudicative.

*Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, held in conformity with prior decisions that approval of a tentative subdivision map was an adjudicative act.[8] We did not arrive at that decision or conclude that

---

[7]Both *Dwyer* and *Johnston* involved referendums. In *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 142 [277 P. 308], the court drew a distinction between zoning initiatives and zoning referendums, upholding the latter on the ground that prior to the referendum the landowner received a hearing before the city council. In *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, however, we expressly repudiated this reasoning in *Hurst,* and quoted *Dwyer* to the effect that "'if the right of referendum can be invoked, the corollary right to initiate legislation must be conceded to exist.'" (18 Cal.3d at p. 595, quoting 200 Cal. at p. 511.)

[8]Prior California decisions had distinguished from zoning legislation a variety of administrative land use decisions, including the granting of a variance (see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12]), the granting of a use permit (see *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 834), and the approval of a subdivision map (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 837-838 [118 Cal.Rptr. 856]). In classifying such decisions as adjudicative, courts have emphasized that the decisions generally involved the application of standards established in the zoning ordinance to individual parcels (see *Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, 614) and often require findings to comply with statutory require-

the particular subdivision approval at issue was adjudicatory in character by examining the size of the subdivision or the number of persons affected. Instead, we stated a generic rule that "[s]ubdivision approvals, like variances and conditional use permits ... [are] 'adjudicatory' in nature." (24 Cal.3d at p. 614.) *Horn* thus did not depart from the classification established by prior precedent.

Plaintiffs suggest that the foregoing principle—that rezoning is a legislative act—operates in the present case to deny them due process of law under the United States and California Constitutions. Both federal and state precedent refute this contention.

In *Eastlake* v. *Forest City Enterprises, Inc.* (1976) 426 U.S. 668 [49 L.Ed.2d 132, 96 S.Ct. 2358], the United States Supreme Court rejected contentions identical to those urged by plaintiffs. There the City Council of Eastlake rezoned eight acres to permit construction of multifamily housing. The proposed zoning change, however, did not receive the approval of 55 percent of the voters as required by the Eastlake City Charter. Rejecting the Ohio Supreme Court's conclusion that the referendum requirement was an unconstitutional delegation of legislative power, the United States Supreme Court held the use of a referendum to bar a zoning change did not violate the due process clause of the Fourteenth Amendment.

A number of passages in the majority opinion of Chief Justice Burger bear closely on the present case. First, that opinion notes that the Ohio Supreme Court held that the rezoning of a single eight-acre parcel is a legislative act. (P. 673 [49 L.Ed.2d at P. 138].) The United States Supreme Court accepted that classification, citing in support two California decisions, *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826 and *Dwyer* v. *City Council, supra,* 200 Cal. 505 (p. 674 [49 L.Ed. 2d at p. 138]). Nowhere does the opinion suggest that the Ohio courts

---

ments or to resolve factual disputes (see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 513-514.)

It is significant that the courts have not resolved the legislative or adjudicative character of administrative land use decisions on a case by case basis, but instead have established a generic rule that variances, use permits, subdivision maps, and similar proceedings are necessarily adjudicative. Thus, even when such actions involve a substantial area (see *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal. Rptr. 242, 586 P.2d 556] (subdivision map for 217 acres)) or affect the community as a whole (*City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375] (use permit for shopping center in small community)), the courts invariably treat them as adjudicative in nature.

erred in treating the rezoning of a single lot as legislative, or even that the classification raised a significant constitutional question.

Second, the Ohio court had expressed the fear that voters would not be able to apply land use standards fairly and consistently. The United States Supreme Court replied: "[T]here is no more advance assurance that a legislative body will act by conscientiously applying consistent standards than there is with respect to voters. . . . The critical constitutional inquiry, rather, is whether the zoning restriction produces arbitrary or capricious results." (P. 676, fn. 10 [49 L.Ed.2d at p. 139].)

Finally, the dissenting opinion of Justice Stevens in *Eastlake* presented the argument that due process required a hearing for the rezoning of small parcels of property, and that the charter referendum requirement thus denied due process. The majority rejected that argument in a footnote. The court stated that: "[¶] The fears expressed in dissent rest on the proposition that the procedure at issue here is 'fundamentally unfair' to landowners; this fails to take into account the mechanisms for relief potentially available to property owners whose desired land use changes are rejected by the voters. First, if hardship is occasioned by zoning restrictions, *administrative* relief is potentially available. Indeed, the very purpose of 'variances' allowed by zoning officials is to avoid 'practical difficulties and unnecessary hardship.' 8E McQuillan, Municipal Corporations § 25.159, p. 511 (3d ed. 1965). As we noted . . . remedies remain available under the Ohio Supreme Court's holding and provide a means to challenge unreasonable or arbitrary action. *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)." (P. 679, fn. 13 [49 L.Ed. 2d at p. 141].)[9]

---

[9]The second paragraph of footnote 13 notes that: "The situation presented in this case is not one of a zoning action denigrating the use or depreciating the value of land; instead, it involves an effort to *change* a reasonable zoning restriction. No existing rights are being impaired: new use rights are being sought from the City Council. Thus, this case involves an owner's seeking approval of a new use free from the restrictions attached to the land when it was acquired."

This language suggests a distinction between initiatives which downzone property and referendums which defeat favorable zoning. Downzoning may raise other constitutional issues (see generally *Agins* v. *Tiburon* (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138]), but in terms of the landowner's right to notice and hearing, we see no basis to distinguish a downzoning case such as the present litigation from *Eastlake*. Both cases involve city council approval of a proposed development (here the city approved a tentative map; in *Eastlake* it granted a zoning change) followed by voter action to bar the construction of the development.

■   Both of the propositions stated in the Supreme Court's footnote apply to the present case. Plaintiffs here retain the right to seek administrative relief from the zoning imposed by the initiative. They also retain the right to seek judicial invalidation of zoning which is arbitrary and unreasonable (see *Hamer* v. *Town of Ross* (1963) 59 Cal.2d 776, 781 [31 Cal.Rptr. 335, 382 P.2d 375]), which bears no reasonable relationship to the regional welfare (see *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, 609-610), or which deprives them of substantially all use of their land (see *Agins* v. *Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138]). We conclude in accord with the *Eastlake* decision, that classification of the rezoning ordinance as a legislative act, thus permitting its enactment by initiative, does not violate the federal Constitution.

When we turn from the federal Constitution to the California Constitution, the force of precedent is even clearer. The California decisions cited previously in this opinion hold that amendment of a zoning ordinance is a legislative act (see cases cited pp. 516-517, *ante*) and consequently that zoning by initiative does not violate due process (*San Diego Bldg. Contractors Assn.* v. *City Council, supra,* 13 Cal.3d 205).

■   We can appreciate the view that in a case in which, unlike the present case, proposed legislation affects only a few persons, the legislative body should grant those persons a hearing if practicable. To elevate this precatory suggestion to a constitutional command, however, would radically constrain the power of legislative bodies. The rationale of our decision could not be confined to zoning cases; in *San Diego* we expressly denounced the claim that the Constitution provides more complete protection to ownership and development of real property than it provides to other personal rights. (13 Cal.3d at pp. 213-214.) Thus whenever a legislative body enacted legislation which affected relatively few persons, that legislation would be invalid unless the persons affected received notice and hearing before the enacting body. We find no warrant for such a radical curtailment of the authority traditionally enjoyed by legislatures.

We conclude that no constitutional requirement compels us to depart from the California doctrine that rezoning is a legislative act. ■ We recognize, however, that the courts of some other states, basing their decisions on nonconstitutional grounds, have held that in some in-

stances a zoning ordinance is an adjudicative decision.[10] The Court of Appeal, as we noted earlier, adopted that view, holding specifically that the rezoning of relatively small parcels of land is adjudicative in character. We therefore explain our reasons for rejecting that view and adhering to the settled California position.

From the doctrine that zoning ordinances are legislative, but variances and similar administrative decisions are adjudicative,[11] derive a number of rules which facilitate the making of land use decisions and simplify litigation challenging those decisions. Among those rules are: (1) Zoning ordinances, but not administrative decisions, can be enacted by initiative (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra*, 18 Cal.3d 582). (2) Zoning ordinances, but not administrative decisions, are subject to referendum (*Dwyer* v. *City Council, supra*, 200 Cal. 505). (3) A zoning ordinance is reviewable by ordinary mandamus (Code Civ. Proc., § 1084); an administrative decision, by administrative mandamus (Code Civ. Proc., § 1094.5). (4) A zoning ordinance, unlike an administrative decision, does not require explicit findings (*Ensign Bickford Realty Corp.* v. *City Council, supra*, 68 Cal.App.3d 467, 473). (5) A zoning ordinance is valid if it is reasonably related to the public welfare (see *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 488 [234 P. 381, 38 A.L.R. 1479]; administrative decisions must implement established standards and rest upon findings supported by substantial evidence. (Code Civ. Proc., § 1094.5.) Under the views advanced by plaintiffs, however, the application of these rules is uncertain until a reviewing court finds whether the decision is legislative or an adjudicative act. Plaintiffs propose, however, no test to distinguish legislative and adjudicative actions with reasonable certainty.

The factual setting of the present case illustrates the problems courts will face if we abandoned past precedent and attempted to devise a new

---

[10]See *West* v. *City of Portage* (1974) 392 Mich. 458 [221 N.W.2d 303, 72 A.L.R.3d 1016]; *Fasano* v. *Board of County Comm'rs of Washington Cty.* (1973) 264 Ore. 574 [507 P.2d 23]; *Leonard* v. *City of Bothell* (1976) 87 Wn.2d 847 [557 P.2d 1306]. Similar views are advocated in Glenn, *State Law Limitations on the Use of Initiatives and Referenda in Connection with Zoning Amendments* (1978) 51 So.Cal.L.Rev. 265; Hile; *Zoning by Initiative in California: A Critical Analysis* (1979) 12 Loyola L.A. L.Rev. 903; Kahn, *In Accordance with a Constitutional Plan: Procedural Due Process and Zoning Decisions* (1979) 6 Hastings Const.L.Q. 1011.

[11]A holding that rezoning of relatively small parcels is an adjudicative act would necessarily imply that decisions presently considered adjudicative, such as the grant of a use permit or the approval of a subdivision map, would henceforth be classified as legislative acts if they affected a relatively large parcel of property.

test distinguishing legislative and adjudicative decisions. The Court of Appeal, for example, found here that the instant initiative was an adjudicative act because it rezoned a "relatively small" parcel of land. It is not, however, self-evident that 68 acres is a "relatively small" parcel; some cities have entire zoning classifications which comprise less than 68 acres. The size of the parcel, moreover, has very little relationship to the theoretical basis of the Court of Appeal holding—the distinction between the making of land-use policy, a legislative act, and the asserted adjudicatory act of applying established policy. The rezoning of a "relatively small" parcel, especially when done by initiative, may well signify a fundamental change in city land-use policy.

Plaintiffs alternatively urge that the present initiative is adjudicatory because it assertedly affects only three landowners. But this is a very myopic view of the matter; the proposed construction of housing for thousands of people affects the prospective tenants, the housing market, the residents living nearby, and the future character of the community. The number of landowners whose property is actually rezoned is as unsuitable a test as the size of the property rezoned. Yet without some test which distinguishes legislative from adjudicative acts with clarity and reasonable certainty, municipal governments and voters will lack adequate guidance in enacting and evaluating land-use decisions.

In summary, past California land-use cases have established generic classifications, viewing zoning ordinances as legislative and other decisions, such as variances and subdivision map approvals, as adjudicative. This method of classifying land-use decisions enjoys the obvious advantage of economy; the municipality, the proponents of a proposed measure, and the opponents of the measure can readily determine if notice, hearings, and findings are required, what form of judicial review is appropriate, and whether the measure can be enacted by initiative or overturned by referendum.

To depart from past precedent and embark upon a case by case determination, on the other hand, would incur substantial administrative cost. Such a rule would expose the municipality to the uncertainty of whether a proposed measure would be held to be legislative or adjudicative: it would entail cost to the litigants, and it would burden the courts with the resolution of these issues.

Plaintiffs argue, however, that the administrative cost which would be entailed by departure from precedent in this case is justified to pro-

tect the rights of landowners. We believe, however, that those rights are adequately protected under existing law. As we noted earlier, landowners retain constitutional protection against zoning which is arbitrary, unreasonable, or deprives them of substantially all use of their land. (See *ante*, at p. 521.) When zoning is enacted by the city council, land owners by statute are entitled to notice and hearing. (Gov. Code, § 65856.) When zoning is enacted by initiative, landowners have the same opportunity as their opponents to present their case to the electorate. (See Oran, *The Initiative and Referendum's Use in Zoning* (1976) 64 Cal.L.Rev. 74, 93.)

Although from the landowner's view a "hearing" before the electorate may be less satisfactory than a hearing before a planning commission or city council, as a practical matter the initiative is unlikely to be employed in matters which could fairly be characterized as adjudicative in character. An initiative petition requires valid signatures of 10 percent of the registered voters. (Elec. Code, § 4011.) Having accomplished that feat, the proponents must then be prepared to wage an expensive campaign to persuade the majority of the voters to support the measure. In consequence of these requirements, the initiative can be and is employed to support or oppose major projects which affect hundreds or thousands of persons and often present questions of policy concerning the quality of life and the future development of the city; it is not likely to be employed in matters which affect only an individual landowner and raise no policy issues.

Neither do we believe departure from settled precedent is necessary to protect the public interest in rational and orderly land-use planning. Zoning changes must conform to the city's general plan (see Gov. Code, § 65860), which must in turn conform to requirements established by state statute. Zoning changes must also meet the criteria established in *Associated Home Builders etc., Inc.* v. *City of Livermore, supra*, 18 Cal.3d 582, which require such legislation to reasonably relate to the welfare of the region affected. (See 18 Cal.3d at pp. 609-610.) The spectre of a few voters imposing their selfish interests upon an objecting city and region has no basis in reality.

In conclusion, the current California rule that rezoning is a legislative act is well settled by precedent and comports with both federal and state constitutional requirements. The cost of departing from settled precedent in this setting is apparent; the benefits questionable and per-

haps nonexistent. We therefore adhere to the rule that a zoning ordinance is a legislative act and, as such, may be enacted by initiative.

Appellants Arnel and South Coast Plaza presented numerous other issues on appeal which the Court of Appeal, erroneously concluding that the initiative was not a legislative act, did not resolve. In order to assure that these issues are considered by the Court of Appeal, we re-transfer this cause to that court. (See *Taylor* v. *Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 895, 901 [130 P.2d 23, 549 P.2d 855]; *Gonzales* v. *Nork* (1978) 20 Cal.3d 500, 511 [143 Cal.Rptr. 240, 573 P.2d 458].)

The cause is retransferred to the Court of Appeal, Fourth Appellate District, for disposition in light of this opinion. With respect to the proceeding before this court each party shall bear its own costs.

Bird, C. J., Mosk, J., and Manuel, J., concurred.

Newman, J., concurred in the result.

**RICHARDSON, J.**—I respectfully dissent. In my view, the owner of real property is constitutionally entitled both to a proper notice and an effective opportunity to be heard before either the people or its government may change substantially the uses of the property. The majority holds otherwise. It concludes that while the grant of a zoning variance or use permit on real property is an "adjudicative" act, the amendment of an entire zoning ordinance is "legislative" in character even though that amendment affects only a very few parcels of land owned by only a very few persons. (*Ante,* pp. 518-519.) In so holding, the majority emphasizes the *form* of the administrative action, without considering either its *substance* or *effect.*

The result is to deny appellant property owners important due process protections to which they clearly should be entitled when their property is subjected to an adjudicative disposition. Approximately 12 percent of the registered voters of Costa Mesa, by approval of an initiative, are permitted to abort the construction of a carefully considered moderate income housing project without giving appellant owners any prior opportunity to express their opposition at a full public hearing. When measured against this sacrifice of fundamental constitutional rights and interests the majority's expressed concern for the saving of "administrative costs" (*id.,* at p. 523) is of substantially less importance.

I find merit in appellants' primary contention that the rezoning of a very small number of specific parcels of property privately owned by a few landowners is essentially an adjudicative action which constitutionally requires that the affected owners be afforded both notice and a reasonable opportunity for hearing which are not presently afforded by the initiative process.

In 1974, we rejected a broad constitutional attack upon the use of the initiative process to enact zoning ordinances. (*San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.2d 973].) It was argued in *San Diego* that because zoning ordinances frequently have a direct and substantial effect upon property values, zoning by initiative would be an improper device unless accompanied by the requisite due process protections of notice and hearing. (*Id.*, at pp. 220-224 (dis. opn. by Burke, J.).) We held, however, that such due process protections were required only in connection with "quasi-judicial" or "adjudicative" proceedings and need not accompany the adoption of "general legislation." As we emphasized, "Since the enactment of the instant general zoning ordinance [adopting a 30-foot height limit for all building along San Diego's coastline] through the initiative process was unquestionably a legislative, as distinguished from adjudicative, act, the constitutional requirements of 'notice' and 'hearing' do not apply." (*Id.*, at p. 211.)

*San Diego*, however, relied primarily upon the principle that, "From the inception of this nation's legal system, *statutes of general application* have regularly been enacted without affording each potentially affected individual notice and hearing." (*Ibid.*, italics added.) We were definitionally precise. We quoted Justice Holmes' familiar observation in *Bi-Metallic Co.* v. *Colorado* (1915) 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141], that "Where a rule of conduct *applies to more than a few people* it is impracticable that every one should have a direct voice in its adoption. . . . *General statutes* within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard." (Italics added.)

In *San Diego* we emphasized the further distinction that "the decisions applying the due process requirements of notice and hearing have all involved governmental decisionmaking in an *adjudicative* setting, in which the government's action affecting an individual was determined by facts peculiar to the individual case; . . . [Italics in original.] [¶] The

San Diego ordinance challenged in the instant action is unquestionably *a general legislative act. We are thus not faced . . . with any of the great number of more limited 'administrative' zoning decisions, such as the grant of a variance or the award of a conditional use permit, which are adjudicatory in nature* and which thus involve entirely different constitutional considerations. Instead we review the enactment of legislation of the classic mold, *establishing a broad, generally applicable rule of conduct on the basis of a general public policy.* Under the established constitutional principle noted above, notice and hearing have never been constitutional prerequisites for the adoption of such a legislative enactment. [Citations.]" (Italics added, fns. omitted, *id.*, at pp. 212-213.)

As the majority properly notes, the enactment of general zoning (and rezoning) measures ordinarily is deemed to be a legislative act. (See *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834-835 [323 P.2d 71]; *Toso* v. *City of Santa Barbara* (1979) 101 Cal.App.3d 934, 942 [162 Cal.Rptr. 210]; *Ensign Bickford Realty Corp.* v. *City Council* (1977) 68 Cal.App.3d 467, 473 [137 Cal.Rptr. 304].) Appellants forcefully and correctly contend, however, that where, as here, a restrictive rezoning ordinance applies to only a small number of specific parcels of land owned by a few property owners adoption of the ordinance cannot fairly be characterized as "general legislation" which, in any reasonable sense, "establish[es] a broad, generally applicable rule of conduct" within the meaning of our *San Diego* rationale. Rather, the governmental action is "determined by facts peculiar to the individual case." Such an ordinance much more closely resembles the grant of a variance or the award of a conditional use permit, matters which uniformly have been held to constitute adjudicative action. (*San Diego*, at p. 212 and cases cited in fn. 5; see also *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-614 [156 Cal.Rptr. 718, 596 P.2d 1134] [approval of tentative subdivision map]; *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 548-549 [99 Cal.Rptr. 745, 492 P.2d 1137] [grant of conditional use permit]; Glenn, *State Law Limitations on the Use of Initiatives and Referenda in Connection with Zoning Amendments* (1978) 51 So.Cal. L.Rev. 265, 273 [noting the functional equivalence of zoning amendments and special use permits]; Oren, *The Initiative and Referendum's Use in Zoning* (1976) 64 Cal.L.Rev. 74, 89-90 [same].)

I find it wholly anomalous that, had appellants *voluntarily* sought a zoning variance or use permit for their own property, a due process hearing would have been required to permit an airing of the pros and

cons of such an "adjudicative" matter. Yet, under the majority's analysis when third parties, by an initiative, effect for the owner an *involuntary* change of use against the owner's will such notice and hearing is denied the owners, the very parties most directly affected. This result is sanctioned by the majority notwithstanding our admonition that "the most fundamental ingredient of the 'due process' guaranteed by our state Constitution is 'a meaningful opportunity to be heard.'" (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 550 [96 Cal. Rptr. 709, 488 P.2d 13].)

In *Horn, supra*, we recently explored further the distinctions between legislative and adjudicative action within the context of the due process requirements in land use cases. Our analysis in *Horn* is instructive and fully applicable here. We first restated as follows the general rules which govern these controversies: "Due process principles require reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest. [Citations.] [¶] It is equally well settled, however, that only those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. *Legislative* action is not burdened by such requirements. [Citations, italics in original.]...[¶] We expressly cautioned in *San Diego* that land use planning decisions *less extensive than general rezoning* could not be insulated from notice and hearing requirements by application of the 'legislative act' doctrine...." (24 Cal.3d at pp. 612-613, italics added.) Does the present case involve "general rezoning"? Manifestly not.

In *Horn*, the county had approved a tentative subdivision map without giving prior notice to adjoining property owners. Employing the principles described in *San Diego*, we observed that "Subdivision approvals, like variances and conditional use permits, involve the application of general standards to specific parcels of real property. Such governmental conduct, *affecting the relatively few, is 'determined by facts peculiar to the individual case'* and is 'adjudicatory' in nature. ...[¶] Resolution of these issues [regarding subdivision approval] involves the exercise of judgment, and the careful balancing of conflicting interests, the hallmark of the adjudicative process. The expressed opinions of the affected landowners might very well be persuasive to those public officials who make the decisions, and affect the outcome of the subdivision process." (*Id.*, at pp. 614-615, italics added.)

Similarly, in the present case the restrictive rezoning of appellants' properties *and no others* involves precisely the same adjudicative considerations that were present in *Horn.* The initiative, rezoning the Arnel property to R-1, effectively rescinded and thwarted a prior city approval of a subdivision plan and tentative map which would have permitted extensive low-to-medium density residential development of that property. As for the South Coast and Roberts properties, the rezoning measure likewise nullified a prior city approval for medium-density residential development. The decision to rezone and thereby severely restrict future development of these three specific properties, affecting only three landowners in the entire city, clearly was a decision "affecting the relatively few, ... 'determined by facts peculiar to the individual case' and...involves the exercise of judgment, and the careful balancing of conflicting interests ...." (*Ibid.*)

The Costa Mesa initiative herein presented contains no general statement of land development policy. It prescribes no criteria of broad, general application to all city property, or even to all property within a particular zone or district. Rather, the ordinance is pointed at only three owners. It relates to the specific uses of three very specific parcels constituting only a small fraction of the zoned property within city limits. As such, the ordinance is "adjudicative" within any rational meaning of the term as defined in our prior cases.

The foregoing analysis finds support in three very recent and relevant legal commentaries. Commenting upon the doubtful social value of the initiative process in the context of rezonings, one writer has observed that "Where questions on the [initiative] ballot affect and interest many voters, public participation in decisions would indeed further accuracy and acceptability values. On the other hand, *where only a few owners of a single parcel are affected* ... and the decision to be made requires the evaluation of specific facts, voters would have much less to contribute, while a formal hearing would be valuable. Additionally, voters will have less to complain about if they are not consulted on decisions which affect only a few citizens." (Kahn, *In Accordance with a Constitutional Plan: Procedural Due Process and Zoning Decisions* (1979) 6 Hastings Const.L.Q. 1011, 1047-1048, italics added.)

Equally recently another author has focused precisely upon the due process aspects of zoning by initiative, in noting that "There is a significant risk that zoning by initiative may erroneously and permanently deprive affected landowners of their property rights. The electorate is

not required to ensure that its proposals are consistent with local planning, nor is it required to consider the environmental consequences of its action. The property owner becomes simply a voice in the wilderness left to compete with the sometimes selfish desires of society in general. He may be left saddled with the burdens of ownership while the initiative action takes away the benefits of ownership . . . ." (Hile, *Zoning by Initiative in California: A Critical Analysis* (1979) 12 Loyola L.A. L.Rev. 903, 922-923.) The writer thereupon concludes that "Compliance with the State Zoning Law scheme of hearings, study, recommendations, etc., would provide at least some safeguards to the property owner and put him on a more equal footing." (P. 923.)

Still another current commentator stresses the inappropriateness of the initiative process as a device to accomplish "small-scale rezoning decisions." Professor Peter G. Glenn reasons that "The essential characteristic of a tract or small-area rezoning is that the decision directly imposes, removes, or modifies regulations in the context of a particular development proposal. . . . [¶] In such cases an intelligent decision would seem to require a factfinding and assessment process by persons who have developed some expertise and who are conversant with less obvious implications of the decision for the community's overall planning effort. To the extent that particularized facts are relevant, a somewhat formal hearing process would seem to be essential to provide the basis for both intelligent decisionmaking and concomitant fairness to those affected by the decision. Fairness also suggests the desirability of a final decision by the representative governing body . . . . [¶] These characteristics of a small-area rezoning suggest that plebiscite decisionmaking may not yield intelligent decisions and may result in decisions that are unfair to the affected landowners. . . . [¶] Finally, small-scale rezoning decisions are hardly the type of governmental decision for which the direct legislation devices were designed. These rezonings rarely involve statements of general public policy; such decisions implement rather than declare policy, and often do so in a context where the citizens most directly affected are accorded special rights of participation in the representative decision making process. On balance, the small-scale rezoning decision appears to be one in which a choice should be made against the use of the direct legislation devices; a contrary result threatens important societal values without a significant countervailing benefit." (Glenn, *supra*, 51 So.Cal.L.Rev. at pp. 304-305, fns. omitted.)

The distinction between "adjudicative" and "legislative" matters does not lend itself to easy or precise definition. The courts and commenta-

tors have suggested a variety of different approaches. (See, e.g., *City of Rancho Palos Verdes* v. *City Council* (1976) 59 Cal.App.3d 869, 883-885 [129 Cal.Rptr. 173] ["dominant concern" test]; Oren, *supra*, 64 Cal.L.Rev. at pp. 85-93 ["balancing approach"]; Kahn, *supra*, 6 Hastings Const.L.Q. at pp. 1047-1048 [number of landowners affected]; see also *Andover Develop. Corp.* v. *City of New Smyrna Beach* (Fla.App. 1976) 328 So.2d 231, 237-238; *Fasano* v. *Board of County Comm'rs. of Washington Cty.* (1973) 264 Ore. 574 [507 P.2d 23, 26]; *Fleming* v. *City of Tacoma* (1972) 81 Wn.2d 292 [502 P.2d 327, 331]; *Neuberger* v. *City of Portland* (1978) 37 Ore.App. 13 [586 P.2d 351, 354]; *South Gwinnett Venture* v. *Pruitt* (5th Cir. 1973) 482 F.2d 389, 393; *West* v. *City of Portage* (1974) 392 Mich. 458 [221 N.W.2d 303, 308, 72 A.L.R.3d 1016].) As a general proposition, however, governmental action may be deemed adjudicative for due process purposes if it requires consideration of facts peculiar to the individual case, and, affecting the relatively few, involves the exercise of discretionary judgment and the careful balancing of conflicting interests. (*Horn, supra*, 24 Cal.3d at pp. 614-615.)

I emphasize that in the present case we are concerned with the legislative or adjudicative character of the ordinance for the purpose of determining whether *due process requirements were satisfied.* We are not presented with the question whether the adjudicative nature of rezoning ordinances of this kind requires either a more probing form of *judicial review* or the *preparation* of judicial-type *findings.* (See, e.g., *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12]; *Toso* v. *City of Santa Barbara, supra*, 101 Cal.App.3d 934, 942; *Ensign Bickford Realty Corp.* v. *City Council, supra*, 68 Cal.App.3d 467, 473.) The disposition of such further issues may well be governed by considerations not fully developed here.

The majority insists that the initiative process itself meets due process requirements affording appellants and those similarly affected both ample notice and opportunity to express their views prior to the adoption of the measure. I am unable to agree. The initiative process is ill-suited to effect the kind of adjudicative changes that are herein presented. Justice Tamura speaking for the court in *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 64 [107 Cal.Rptr. 214] (disapproved on other grounds in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]) carefully and accurately describes the

substantial deficiencies of the initiative process when compared with the multiple procedural safeguards contained in our state zoning laws (Gov. Code, § 65800 et seq.): "It is urged that interested persons can suffer no substantial injury because the election process itself provides the equivalent safeguards afforded by state zoning law procedures. We are unpersuaded. The kind of public debate on the merits of a proposed zoning measure afforded by the election process, including the limited opportunity for the submission of written arguments to the voters, cannot be equated with a dispassionate study, evalation and report upon the proposal by a staff of planning experts (§ 65804), notice and hearing before the planning commission (§ 65854), written recommendation by the planning commission with reasons for its recommendation (§ 65855), and notice and hearing before the legislative body (§ 65856). Furthermore, it is common knowledge that election campaigns cost money and that the extent to which one may be heard in an election too often depends on the size of one's pocketbook whereas planning commissions and legislative bodies are required by law to afford all interested persons a full and fair hearing on the merits of their respective claims. Moreover, the election offers the voters but a single choice, to accept or reject the proposal in its entirety. The legislative body, however, is empowered to modify (as well as approve or reject) a recommendation of the planning commission thereby enabling it to consider and take into account in its actions the legitimate claims and suggestions of those who would be affected by the proposal even though they may represent but a small segment of the electorate."

The *Taschner* court concluded that some provision for notice and hearing comparable to the provisions of the state zoning laws is required as a matter of constitutional due process, at least whenever the zoning measure substantially affects land use in an adjudicative manner. (For similar analyses, see *Associated Home Builders, supra,* 18 Cal.3d 582, 613-615 (dis. opn. by Clark, J.); *San Diego, supra,* 13 Cal.3d 205, 222-223 (dis. opn. by Burke, J.); *People's Lobby, Inc.* v. *Board of Supervisors* (1973) 30 Cal.App.3d 869, 873 [106 Cal.Rptr. 666]; Comment (1973) 10 Cal. Western L.Rev. 105, 114-117; Kahn, *supra,* 6 Hastings Const.L.Q. at pp. 1047-1048; Glenn, *supra,* 51 So. Cal. L.Rev. at pp. 304-305; but see Oren, *supra,* 64 Cal.L.Rev. at pp. 92-93.)

I am unpersuaded by the majority's professed concern over the inability of courts to draw lines of distinction between "relatively small" and "large" parcels of land held by a "few" as opposed to "many" landown-

ers. Courts for years have fully demonstrated their ability on a case-by-case basis to quantify fairly land usages for purposes of ascertaining their "adjudicative" or "legislative" function. This has been so from Justice Holmes' use of the term "more than a few people" in *Bi-Metallic Co., supra*, to our description of the "relatively few" in *Horn*.

Regardless of semantic niceties, however, the decision in this case should turn on what is a *fair, equitable* and *just* resolution of this dispute between the affected parties. On the one hand the majority principally urges that its result effects an "economy" (*ante*, p. 523) or lessened "administrative cost" (*id.*, at p. 523). But we have been traditionally hesitant as a court to place a price tag on a constitutional right, and what of the opposing interest, the property rights of appellants? It is fundamental that the Fifth and Fourteenth Amendments of the federal Constitution impose due process property protections against both federal and state action. If one turns to the California Constitution one need go no further than the very first section of the very first article before learning that the sovereign people of this state have identified "acquiring, possessing, and *protecting* property" as rights which they have described as "inalienable," and which they have ranked following only "life and liberty" and before their "safety, happiness, and privacy." I am thus led to the inevitable conclusion that in determining priorities, appellant's constitutional protection comes first, and any administrative convenience, efficiency, or economy comes a distant second. On principle the question must be asked—why is not the property owner entitled to a notice and a fair opportunity to be heard before the use of the subject property is so significantly affected?

I do not suggest that it would be impossible to modify the initiative process in a manner that would accord with due process principles. Justice Burke wisely observed that "The Legislature or the governing boards of local public entities might well develop an approach which strikes a proper balance between the rights of the affected property owners and the interests of the public in reserving the power to initiate legislation." (*San Diego Bldg. Contractors Assn.* v. *City Council, supra*, 13 Cal.3d 205, 224, fn. omitted; see also Kahn, *supra*, 6 Hastings Const.L.Q. at p. 1048; Comment, *supra*, 10 Cal. Western L.Rev. 105, 128-130, advancing a proposal to permit zoning by initiative with provision for a modification hearing by the governing body after the initiative measure is adopted.) As carefully noted in *Horn*, "We deliberately refrain from describing a specific formula which details the nature, content, and timing of the requisite notice [and hearing]. Rath-

er, we leave to the affected local governments [and to the Legislature] these determinations." (P. 618.)

Leaving the specifics in legislative hands we should reaffirm, however, the constitutional requirement that notice and opportunity to be heard must be afforded the landowner, large or small, when within an adjudicative setting governmental decisions are made which substantially affect his property.

I would reverse the judgment and direct the trial court to declare invalid the subject initiative ordinance.

Clark, J., concurred.